Filed 12/19/13

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FLORA DOLNIKOV, | B226675 |
| Plaintiff, Cross-defendant and Respondent, | (Los Angeles County Super. Ct. No. BC321215) |
| v. | |
| DIKRAN EKIZIAN et al., | |
| Defendants, Cross-complainants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert L. Hess, Judge.  Affirmed.

Law Offices of Herbert Hafif, Herbert Hafif, Greg K. Hafif; and Mark C. Calahan for Defendants, Cross-complainants and Appellants.

Timothy D. McGonigle Prof. Corp. and Timothy D. McGonigle for Plaintiff, Cross-defendant and Respondent.

Melvin Teitelbaum for Westmac Investment Ventures, LLC and Erina Gilerman as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

_____

[*]     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for partial publication.  The portions of this opinion to be deleted from publication that are enclosed within double brackets, [[ ]].

INTRODUCTION

We hold in this appeal that conduct can constitute actionable interference with the use and enjoyment of an easement even when the conduct does not physically obstruct the servitude. The easement in question is for ingress and egress to undeveloped lots in the Hollywood Hills. Plaintiff Flora Dolnikov, owner of the dominant tenement, was interrupted during her construction of two residences by defendants Dikran Ekizian and Diramesi Investments, LLC (defendants or Ekizian), the servient tenement owners who refused to sign both a covenant for community driveway and permission for a building permit to construct a retaining wall. The City of Los Angeles Department of Building and Safety (LADBS) required defendants' signatures before it would issue plaintiff the permits necessary to make the easement roadway useable for its intended purpose. Plaintiff sued defendants seeking declaratory relief and damages. Defendants appeal from the ensuing judgment entered in favor of plaintiff. In the published portion of this opinion, we hold that the evidence supports the jury's finding that defendants unreasonably interfered with plaintiff's use and enjoyment of the easement. In the unpublished portion of this opinion, we reject defendants' remaining challenges. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The easement*

In 1998, plaintiff acquired undeveloped Lots 29 and 30 in Tract 4202 located above Laurel Canyon. Her neighbor to the north and east, Amnon Gad, through his company, Amgad, Inc., owned Lot A, off of Floral Avenue, that consisted of four undeveloped acres in Tract 4150.

In 1942, defendants' predecessor in interest granted and recorded the easement at issue to plaintiff's predecessor in interest (the easement). The easement provides in relevant part:

2

"EASEMENT – GENERAL

"A strip of land 14 Ft. wide, 7.00 Ft on each side of the following described center line [beginning, curves, and ending described].  The foregoing described Right of Way is now improved and is used by the Bureau of Water Works and Supply of the City of Los Angeles, California [now the Los Angeles Department of Water and Power (LADWP)] . . . .  NOW, THEREFORE, it is hereby agreed as follows: *The said* [*defendants' predecessor*] *does hereby grant, assign and set over to the said* [*plaintiff's predecessor*] *. . . A right of way for ingress and egress over the above described property for street purpose for the benefit of Lots 29 and 30 of Tract 4202 . . . .*  TO HAVE AND TO HOLD the said easement, right and right-of-way unto [plaintiff's predecessor], his successors or assigns for a period of perpetuity. . . ."  (Italics added.)

The easement begins at the top of Floral Avenue at the south end of Lot A.  It runs on the Lot A side of the property line with plaintiff's properties, uphill and roughly north in a wide curve, concave to the east, around a hill on Lot A and ending at a point in Lot A that is even with the northern boundary of plaintiff's properties to the west.  (A copy of a schematic is attached as an appendix to this opinion.)

In 2001, plaintiff obtained permits from LADBS to construct two houses on her land, to be designated 8027 and 8031 Floral Avenue.  Her permit application included an unrecorded covenant and agreement for a community driveway executed in 1999 by defendants' predecessor, Mr. Gad.  LADBS issued the permits with the understanding the driveway would be 14 feet wide, the width of the easement, notwithstanding the zoning code required a 20-foot width.

In June 2002, while plaintiff's construction was in progress, Amgad, Inc. sold Lot A to defendant Diramesi Investments, LLC, a company owned by defendant Ekizian.  Defendants purchased Lot A for investment purposes with full knowledge of the easement and plaintiff's development.

2. *The cut and the retaining wall permit*

Plaintiff's architect designed both residences so that their front doors and garages faced roughly east toward the easement.  The slope of the easement was too steep and the

3

right of way had fallen into disrepair so that all that remained of the original pavement was substantially covered with dirt and rocks from uphill. As such, the easement was unsuitable for ingress and egress to plaintiff's property. One of the first steps plaintiff took was to improve the easement roadway so that it could be used for access to plaintiff's houses. LADBS approved a grading plan to lower the ground in the upper end of the easement to allow greater and more level access into the garage for 8031 Floral Avenue, on old Lot 29. The grading would lower the soil level about six to eight feet below the level of what is the continuation of the old LADWP right-of-way at the end of the easement leading north into defendants' property. The cut would create a roughly vertical face adjacent to the property line that needed shoring to stabilize the steep slope on defendants' property and to comply with the building code. To stabilize the slope, the grading plan called for a retaining wall to be constructed across the face of the cut along the Lot A (or defendants') side of the easement and perpendicular across the end of the easement where the LADWP right-of-way continues into Lot A.

After making the cut into the soil on the easement according to the approved grading plans, plaintiff discovered there was no permit to construct the retaining wall in the LADBS files. When she went to apply for the missing permit, she learned that Ekizian had complained and questioned plaintiff's right to build on his property.

3. *LADBS stops work on plaintiff's project and revokes her permit.*

LADBS notified plaintiff in June 2004 of its intent to revoke her building permits. LADBS explained that, among other things, the community driveway covenant from Gad was invalid because it was unrecorded, and LADBS required a new covenant signed by Ekizian as current owner of the property.

Plaintiff had numerous conversations with defendants, during which it became clear that Ekizian opposed her right to build. Ekizian did not recognize the unrecorded community driveway covenant from Gad; did not acknowledge plaintiff's easement rights; insisted the driveway had to be 20 feet wide per then-current code requirements, not the 14-foot width of the easement; and complained that he was damaged by her grading cut into the side of the easement. Ekizian demanded $100,000, then $200,000

4

from plaintiff. He stated variously that the money represented damages, or was a prerequisite to talks. He also demanded plaintiff cut into his hill, build a 20-foot wide road, buy a $1 million insurance policy naming him, and erect a retaining wall to his specifications for width, depth, and paint, before he would sign the community driveway covenant. Plaintiff felt Ekizian was "just trying to extort money," and she could not comply with what she thought were Ekizian's "outrageous" demands.

In the absence of defendants' signatures, LADBS issued a stop-work order in June 2004 and revoked plaintiff's permits in late July 2004, bringing to a halt work on the driveway that provided access to the houses. At the time, plaintiff's houses were in the framing stage, with exposed wood and no roof and so they posed a fire hazard. LADBS would only reinstate the original permits if plaintiff recorded a community driveway covenant signed by Ekizian. Ekizian refused to sign.

Plaintiff filed applications with LADBS for a garage in a different place on Lot 30 and a new garage for Lot 29 with access from Seaview Trail to the west instead of the easement. In 2005, LADBS issued permits with the condition that the certificate of occupancy for the dwelling would not be issued until the detached garage accessible from Seaview Trail was completed or until a properly executed community driveway covenant, approved by LADBS, was recorded. Ekizian still refused to sign a new community driveway covenant.

4. *The instant lawsuit*

Meanwhile, in September 2004, plaintiff filed her complaint against defendants seeking damages for interference with her easement, injunctive relief, and a declaration of the parties' rights and duties under the easement. Defendants cross-complained seeking damages for, among other things, trespass, negligence, and nuisance by failing to maintain the easement and by improperly excavating a seven-foot cut on defendants' property without defendants' consent. The matter was bifurcated.

5. *The declaratory judgment after bench trial*

After a bench trial on the declaratory relief question, the trial court found, based on the wording of the 1942 deed, that the easement provided for a 14-foot-wide right-of-

5

way for ingress and egress from Lots 29 and 30 onto Floral Avenue that did not exclude use by the servient tenement owners that was consistent with plaintiff's normal use of the easement. As for the grading and retaining walls as shown on plaintiff's approved grading plan, the court found they were *necessary for the use of the easement for its expressly intended purpose by plaintiff, the owner of the dominant tenement, and that their presence was not in any sense inconsistent with the nature of the easement and were authorized by the easement*. The court reasoned that the retaining wall along the roadway parallel to the easement's length was necessary to prevent earth from re-covering the road surface and interfering with the dominant tenement's use of the easement as a driveway. Thus, the retaining wall was the type of permanent structure that was a " 'necessary incident' " of the easement.

The grading cut and the retaining wall at the end of the easement were also necessary to enable plaintiff's use of the full extent of the easement as a right-of-way for ingress and egress, the trial court found. However, that retaining wall at the end of the easement also constituted a barrier to defendants' access from the easement to his Lot along the continuation of the DWP right-of-way. The court found that the solution to this obstruction was found on defendants' property, in that the retaining wall across the end of the easement would become unnecessary if the grade up what is the extension of the DWP right-of-way into Lot A, were ever modified to permit vehicular access.

6. *Plaintiff's persisting permit troubles*

In 2009, LADBS issued a retaining wall permit for 8030 Floral Avenue and plaintiff was able to resume construction. However, LADBS revoked that permit because defendants refused to give permission for it, even after the trial court declared the wall to be a necessary part of the easement. As of trial, plaintiff had no retaining wall permit and so LADBS would not conduct a final inspection of her property to issue her occupancy certificates.

7. *The jury trial and verdicts*

At trial, plaintiff adduced evidence that defendants committed the following four specific acts that she believed constituted interference with her use and enjoyment of the

6

easement: Ekizian's (1) refusal to sign the covenant for community driveway; (2) refusal to sign a retaining wall permit which was a prerequisite to plaintiff's occupancy certificate; (3) demands for money in exchange for granting plaintiff's rights she already possessed in the easement; and (4) statements that plaintiff lost her easement by creating the grading cut and burdening the easement.

Defendants moved for nonsuit and then directed verdict on the grounds that these four acts or refusals to act did not interfere with plaintiff's easement. Plaintiff countered that the easement created a covenant running with the land that is a contract into which a covenant of good faith and fair dealing could be implied. Defendants argued that as a matter of law, a covenant of good faith and fair dealing cannot be implied into an easement created by grant deed. The trial court agreed with plaintiff that the deed was also a covenant running with the land and allowed her to so amend her complaint.

The jury answered special questions finding that defendants substantially and unreasonably interfered with plaintiff's use and enjoyment of her easement by acting or failing to act, and next that defendants breached the implied covenant of good faith and fair dealing contained in the easement's running covenant. On defendants' complaint, the jury also found that plaintiff breached the implied covenant of good faith and fair dealing.

The trial court entered its judgment awarding plaintiff $713,927.96 in damages and interest, but ordering her to remove that portion of the retaining wall across the end of the easement at her expense if the grade up what was the extension of the DWP right-of-way onto Lot A, is modified pursuant to permits from LADBS. The court permanently enjoined defendants from interfering with plaintiff's easement, including interfering with the construction, maintenance, and repair of the retaining wall. Recognizing that LADBS required the servient tenement owner to sign permission for the retaining wall before it would inspect and issue certificates of occupancy, the court ordered defendants to sign the necessary forms, if and when requested. The court retained equitable jurisdiction in recognition that plaintiff continued to suffer damages

every day that her use of the easement was infringed. Defendants' timely appeal ensued. Additional facts will be presented with the relevant issue in the discussion section.[1]

**[[Begin nonpublished portion]]**

**[[CONTENTIONS**

Defendants' opening brief lists eight questions presented at pages 13 and 14. However, the discussion section raises and discusses only five specific contentions that are actually supported with reasoned argument and citation to authority. All "questions presented" that are not supported with reasoned argument are forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [failure to support contention with reasoned argument and citations to authority forfeits argument].) The contentions actually addressed and not forfeited, are:

"A. The Deed at Issue Is a Non-exclusive Ingress and Egress Easement for Street Purposes. It is a Property Interest and Not a Covenant Running with the Land."

"B. All Four Purported Acts of Interference, Which Appellee Claims Rise to the Level of Nuisance Are Barred by the Litigation Privilege of Civil Code Section 47(b)."

"C. Settlement discussions are not actionable and the evidence should not have been allowed."

"D. Appellee's Theory of Nuisance Is for a 'Continuing Nuisance' for Which Only Damages That Accrued Prior to the Filing of the Action Are Recoverable and Appellee Recovered Damages That Accrued after the Lawsuit was Filed."

"IX. Dikran Ekizian is not personally liable." (Capitalization omitted.)**]]**

**[[End nonpublished portion]]**

DISCUSSION

**[[Begin nonpublished portion]]**

---

[1] During pendency of this case, plaintiff filed for bankruptcy protection and the property was sold. We allowed the new owners, Westmac Investment Ventures, LLC and Erina Gilerman, to file a brief as Amicus Curiae.

[[Review of this appeal has been significantly hampered by defendants' appellate briefing. The first 12 pages of the opening brief contain a laundry list of asserted trial court errors, sometimes supported by a citation to authority. The first 12 pages appear to constitute a summary of what is to follow in the discussion section of the brief, as they do not contain much in the way of legal analysis. Yet, upon further review, many of the assertions in the first 12 pages prove to be unconnected to the contentions actually analyzed in the brief's discussion section. The discussion section of the opening brief is where defendants as appellants "should address *all issues* to be raised on the appeal, incorporating sound argument and supporting legal authorities." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) ¶ 9:160, p. 9-49 (rev. #1, 2012).) We will therefore treat the errors listed in the first 12 pages of defendants' opening brief as forfeited, to the extent they are not further developed in the discussion portion of the brief. " 'We are not bound to develop appellants' arguments for them. . . . The absence of cogent legal argument . . . allows this court to treat the contention as waived.' [Citations.]" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) This is particularly so in an appeal of this size with 18 volumes of reporter's transcript and eight volumes of clerk's transcript.

Compounding our difficulties in addressing this appeal is the failure of defendants as appellants to set forth the facts in the context of the proper standard of review, in violation of essential rules of appellate briefing. (*Sebago, Inc. v. City of Alameda* (1989) 211 Cal.App.3d 1372, 1388.)

We turn to the arguments defendants actually raised and supported with reasoned argument and address them seriatim.

A. *Defendants have not demonstrated prejudicial error from the inclusion of causes of action for breach of the implied covenant of good faith and fair dealing in both plaintiff's and defendants' special verdict forms.*

Asserting that easements and running covenants are distinct legal concepts, defendants contend as their overarching assignment of error that the easement deed did not convey a covenant running with the land. They explain that where the deed conveyed

9

an easement, which is governed by property law, the trial court erroneously read into it a running covenant, which is governed by contract law, and then exacerbated the error by allowing the jury to determine whether defendants' four acts breached the covenant of good and fair dealing implied in that running covenant. Defendants conclude by arguing that the trial court committed "prejudicial error" in "instruct[ing] the jury that the deed in question was both an easement and a covenant running with the land. This prejudicial error then allowed [plaintiff] to boot strap what she considered to be unreasonable conduct as a breach of the implied covenant and therefore as an interference with easement."

We need not reach the question whether this deed conveyed both an easement and a covenant running with the land because defendants' contention here is unavailing for three reasons.

1. *Defendants did not demonstrate trial court error.*

Insofar as defendants assign instructional error, their opening brief does not cite us to the relevant instruction actually given. Defendants cite us to their proposed instructions, but not to the court's refusal to give those instructions. It is the appellants' duty to refer the reviewing court to the portion of the record that supports the contentions on appeal. We are not required to conduct an independent, unassisted study of the record in search of grounds to support defendants' contention. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.) Furthermore, although defendants as appellants gave a general recitation of the standard of review for abuse of discretion and sufficiency of the evidence at the beginning of their argument section of their opening brief, they did not cite us to authorities for the appropriate standard of review for instructional error, or tailor their argument on this issue to the applicable standard of review, in violation of basic rules of appellate briefing. (*Sebago, Inc. v. City of Alameda, supra,* 211 Cal.App.3d at p. 1388.) Defendants omitted to discuss how the trial court's decision to instruct the jury on the implied covenant of good faith and fair dealing exceeded the bounds of reason. Therefore, defendants failed to show abuse of trial court discretion. (*Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1374-1375.)

10

2. *Defendants were not prejudiced by this claimed error.*

Even were the instruction erroneous, defendants were not aggrieved, i.e., prejudiced, by the trial court's decision to instruct the jury on both plaintiff's and defendants' causes of action for interference with easement and breach of the covenant of good faith implied in a running covenant. "No judgment shall be set aside, or new trial granted . . . on the ground of misdirection of the jury, or of the improper admission or rejection of evidence . . . or for any error as to any matter of procedure, unless . . . the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. 6, § 13; Code Civ. Proc., § 475.) We do not presume prejudice from an error. It is the appellant's burden to persuade us that the trial court erred in ways that resulted in a miscarriage of justice. (See, e.g., *Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601.)

"A party is aggrieved only if its 'rights or interests are injuriously affected by the judgment.' [Citation.]" (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947.) Such rights or interests " ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' [Citation.]" (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.)

On the cause of action for interference with easement, the jury found in plaintiff's favor. Although the jury separately found defendants breached the implied covenant of good faith, *it only awarded plaintiff $1.00* for that breach. Clearly, the jury considered these causes of action separately and so there is no support for defendants' contention that plaintiff "boot strap[ped] what she considered to be unreasonable conduct as [bad faith] and therefore as an interference with easement." What is more important, however, the jury also found that *plaintiff* breached the implied covenant of good faith causing *defendants damages in the amount of $30,000.* The court then reduced plaintiff's recovery by $29,999, as an offset. Stated differently, regardless of whether the trial court erred in including a cause of action for breach of the implied covenant, or whether a covenant of good faith can be implied in this case, *defendants prevailed on the cause of action for breach of the implied covenant of good faith and fair dealing and so they were not aggrieved or prejudiced by the inclusion of a special verdict on this cause of action.*

11

3. *The evidence supports the jury's finding defendants interfered with plaintiff's use and enjoyment of the easement.* **]]**

**[[End nonpublished portion]]**

Defendants' key assignment of error is the trial court's determination that the 1942 deed was both an easement and a covenant running with the land into which the court implied a further covenant of good faith and fair dealing. On this court's own motion after oral argument, we requested supplemental briefing on the question whether defendants interfered with plaintiff's easement, irrespective of any obligations that might be impliedly contained in a covenant running with the land. Specifically, we asked whether there was legal authority for the proposition that any of the following acts, individually or in combination, constituted interference with plaintiff's use and enjoyment of the easement: Ekizian's (1) refusal to sign a covenant for community driveway; (2) refusal to sign a retaining wall permit; (3) demand for money in exchange for granting plaintiff rights she already possessed in the easement; and (4) statements that plaintiff lost her easement by creating the grading cut and burdening the easement. We were concerned about whether an intangible act that did not physically invade the easement, such as a statement or a refusal to sign documents, could constitute an interference with the easement.

Defendants responded in supplemental briefing that the easement did not require them to sign either document and there is no legal authority for the contention that defendants' refusal to cooperate constituted an interference with plaintiff's use and enjoyment of the easement. Defendants argue that plaintiff may enter over their property to gain access to Floral Avenue, but "[n]othing more." We disagree.

The grant of an easement must "be interpreted liberally in favor of the grantee." (*Norris v. State of California ex rel. Dept. Pub. Wks.* (1968) 261 Cal.App.2d 41, 46-47, citing Civ. Code, § 1069.) When an easement is based on a grant, as it is here, the grant gives the easement holder both "those interests expressed in the grant and those necessarily incident thereto." (*Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 579.) "Every easement includes what are termed 'secondary easements;'

12

that is, the right to do such things as are necessary for the full enjoyment of the easement itself." (*North Fork Water Co. v. Edwards* (1898) 121 Cal. 662, 665-666.)

A secondary easement can be the right to make "repairs, renewals and replacements on the property that is servient to the easement" (*Donnell v. Bisso Brothers* (1970) 10 Cal.App.3d 38, 43) "and to do such things as are necessary to the exercise of the right." (*Smith v. Rock Creek Water Corp.* (1949) 93 Cal.App.2d 49, 53.) Thus, where the easement was for flood control purposes, one court held, it carried a secondary easement for repair of the channel including the right "to take earth, rock, sand and gravel for the purpose of excavating, widening and deepening or otherwise rectifying the channel and the maintenance and repair of embankments and other protection work." (*Haley v. L. A. County Flood Control Dist.* (1959) 172 Cal.App.2d 285, 290.) A right-of-way to pass over the land of another carries with it "the implied right . . . to make such changes in the surface of the land as are necessary to make it available for travel in a convenient manner." (*Ballard v. Titus* (1910) 157 Cal. 673, 681.)

Incidental or secondary easement rights are limited by a rule of reason. "The rights and duties between the owner of an easement and the owner of the servient tenement . . . are correlative. Each is required to respect the rights of the other. Neither party can conduct activities or place obstructions on the property that unreasonably interfere with the other party's use of the property. In this respect, there are no absolute rules of conduct. The responsibility of each party to the other and the 'reasonableness' of use of the property depends on the nature of the easement, its method of creation, and the facts and circumstances surrounding the transaction." (6 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 15:63, p. 15-215.)

As applied to dominant owners, the rule of reason allows them to exercise secondary easement rights "so long as the owner thereof uses reasonable care and does not increase the burden on or go beyond the boundaries of the servient tenement, or make any material changes therein." (*Ward v. City of Monrovia* (1940) 16 Cal.2d 815, 821-822; *North Fork Water Co. v. Edwards*, *supra*, 121 Cal. at p. 666; *Haley v. L. A. County Flood Control Dist.*, *supra,* 172 Cal.App.2d at p. 290.) A secondary easement may be

13

exercised "only when necessary and in such reasonable manner as not to increase the burden needlessly on the servient estate or to enlarge it by alteration in the mode of operation." (*Smith v. Rock Creek Water Corp.*, *supra*, 93 Cal.App.2d at p. 53.) The easement owner does not have the right to "so change the surface of the land as seriously to damage the usefulness of the servient estate . . . [¶] 'It is well settled that the owner of an easement cannot change its character, or materially increase the burden upon the servient estate, or injuriously affect the rights of other persons, but within the limits named he may make repairs, improvements, or changes that do not affect its substance.' " (*White v. Walsh* (1951) 105 Cal.App.2d 828, 832, citing *Burris v. People's Ditch Co.* (1894) 104 Cal. 248, 252.) In *Herzog v. Grosso* (1953) 41 Cal.2d 219, the Supreme Court held that the trial court properly recognized a right in the easement holder to construct and maintain a wooden guard rail along the northerly boundary of the roadway because, "[b]y the grant of the easement . . . [the easement holder] acquired the right to do such things as are reasonably necessary to their use thereof. [Citations.]" (*Id.* at p. 225.) Where the road adjoined a steep embankment, guardrails were "reasonably necessary and would not unduly burden the servient tenement." (*Ibid.*)

Likewise, the servient owner "who holds the land burdened by a servitude" (Rest.3d Property, Servitudes, § 4.9, p. 582) is held to the same reasonableness standard. The servient owner is "entitled to make all uses of the land that are not prohibited by the servitude and that do not interfere unreasonably with the uses authorized by the easement . . . ." (*Ibid.*) "[T]he servient owner may use his property in any manner not inconsistent with the easement so long as it does not *unreasonably impede* the dominant tenant in his rights." (*City of Los Angeles v. Howard* (1966) 244 Cal.App.2d 538, 543, italics added.) "*Actions that make it more difficult to use an easement, that interfere with the ability to maintain and repair improvements built for its enjoyment, or that increase the risks attendant on exercise of rights created by the easement are prohibited . . . unless justified by needs of the servient estate.* In determining whether the holder of the servient estate has unreasonably interfered with exercise of an easement, the interests of the parties must be balanced to strike a *reasonable accommodation* that maximizes overall

14

utility to the extent consistent with effectuating the purpose of the easement . . . and subject to any different conclusion based on the intent or expectations of the parties . . . ." (Rest.3d Property, Servitudes, § 4.9, pp. 582-583, italics added.)

Given that reasonableness depends on the facts and circumstances of each case, "[w]hether a particular use of the land by the servient owner . . . is an unreasonable interference is a question of fact for the jury. [Citations.]" (*Pasadena v. California-Michigan etc. Co.*, *supra*, 17 Cal.2d at pp. 579-580; see also *Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 354.)

Here, in the declaratory relief portion of the trial, the court found "the grading and retaining walls are necessary for the use of the easement for its expressly intended purpose by Lots 29 and 30, and that their presence is not in any sense inconsistent with the nature of the easement."

As the grading and retaining wall are necessary incidents of, and not inconsistent with, the easement for ingress and egress, they are secondary easements, and so plaintiff was entitled to make the cut and build the wall in furtherance of her rights and her full enjoyment of the easement. Plaintiff acted reasonably in grading and seeking to install the retaining wall to prevent defendants' land from eroding onto the roadway. She followed the City's requirements to merely excavate and make changes in the surface of the land necessary to make the easement passable. The record showed plaintiff neither went beyond the bounds of the easement, nor increased the burden needlessly, nor injured defendants' rights. Indeed, rather than damage the usefulness of, or unduly burden, the servient estate, the evidence showed that by grading, plaintiff made the easement useable "for street purpose," and the retaining wall would prevent injurious impact on defendants' property. Therefore, plaintiff benefitted defendants in the event they seek to develop their property.[2]

---

[2]     The trial court also found that the grading cut at the end of the easement "constitutes a new barrier to access to [defendants' property on Lot A] . . . which did not previously exist" and that the City required a retaining wall across the cut there. However, the court ordered plaintiff to remove that portion of retaining wall at her own

15

In contrast, Ekizian's refusals to sign constituted an unreasonable interference with plaintiff's use and enjoyment of the easement. As servient owners, defendants are also subject to the rule of reasonableness and mutual accommodation. The evidence showed that LADBS required defendants' signature on the covenant for community driveway and their permission for the retaining wall permit. But defendants refused to sign and so LADBS revoked plaintiff's building permits forcing plaintiff's construction to come to a halt. Defendants were continuing to prevent plaintiff from obtaining occupancy certificates even at the time the court entered judgment. Notwithstanding the grading and retaining wall were necessary to make the easement useable as a right of way for ingress and egress "for street purpose," Ekizian's refusal to sign these documents impeded plaintiff's rights and rendered plaintiff's easement utterly useless for the purpose for which it was intended. Fully aware before they purchased Lot A that plaintiff was in the process of constructing two residences on her property that relied on the easement, defendants nonetheless refused to accommodate plaintiff. There is no evidence the signatures imposed a needless burden on defendants; the refusal to sign was in no way justified by the needs of the servient estate, particularly because defendants had no development plans at the time, and because the grading and retaining walls made the easement passable and thus benefitted defendants' property. By declining simply to provide a signature on two documents required by the City, defendants interfered with plaintiff's ability to maintain and repair the easement, and rendered plaintiff's use of the easement, not simply more difficult, but impossible. In this manner, defendants' action of refusing to cooperate or reasonably accommodate constituted a complete and total obstruction of plaintiff's easement. The evidence supports the jury's finding defendants unreasonably interfered with plaintiff's use and enjoyment of her easement. (*Pasadena v.*

---

expense *if* the grade up what was the extension of the DWP right-of-way into defendants' property is modified with LADBS-issued building permits. Stated differently, the court found that given the topography, there was a need for a temporary barrier, which wall will be removed *at plaintiff's expense* when access is appropriately required by defendants.

16

*California-Michigan etc. Co.*, *supra*, 17 Cal.2d at p. 579; see also *Red Mountain, LLC v. Fallbrook Public Utility Dist.*, *supra*, 143 Cal.App.4th at p. 354.)[3]

### [[Begin nonpublished portion]]

[[B.  *The litigation privilege of Civil Code section 47, subdivision (b) does not bar admission of the four alleged acts that plaintiff claims constitute unreasonable interference with her use and enjoyment of the easement.*

Returning to the four acts that form the basis of plaintiff's cause of action for interference with her easement, they are Ekizian's:  (1) refusal to sign the covenant for community driveway; (2) refusal to sign a retaining wall permit; (3) demands for money; and (4) statements that plaintiff did not have a valid easement because she over burdened it.  Defendants contend that all four of these actions are protected by the litigation privilege of Civil Code section 47, subdivision (b) and so the trial court erred in refusing to exclude testimony of these four acts.

1.  *Defendants never objected to the evidence of the four acts and invited any error with the result they cannot be heard to complain on appeal that the evidence was inadmissible.*

The sole motion in limine in the record brought under Civil Code section 47, subdivision (b) was defendants' request to exclude "communications by Defendants . . . and their agents, *to the City of Los Angeles and any of its agencies* such as the Department of Building and Safety, the Department of Water and Power, the Zoning or Planning Departments, among others . . . ." on the grounds they were privileged communications.  (Italics added.)  The trial court granted this motion and instructed the jury not to consider complaints defendants made to the City.

Defendants did not move in limine to exclude evidence of communications between defendants and their agents on the one hand and plaintiff and her agents on the

---

[3]     As the result of our holding that defendant' refusal to sign the two documents required by the City constituted and interference with plaintiff's easement rights, we need not decide whether a statement such as the two at issue here might constitute an interference with the easement.

17

other.  During trial, defendants cross-examined plaintiff at length about the four acts and how she claimed they caused her damage.  Only after trial, when they sought instructions and when they moved for directed verdict, did defendants claim the already-admitted evidence was privileged.

" 'Under the doctrine of invited error, where a party, by his conduct, induces the commission of an error, he is estopped from asserting it as grounds for reversal. [Citations].  Similarly an appellant may waive his right to attack error by expressly or impliedly agreeing at trial to the ruling or procedure objected to on appeal.' " (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1685-1686; Evid. Code, § 353.)  By failing to timely object or to move to exclude the evidence of the four acts, and by affirmatively adducing evidence of the four acts, defendants invited any error.

2. *The litigation privilege does not immunize the four acts.*

Even if the invited error doctrine did not apply, we conclude none of the four specified acts is protected by the litigation privilege.  At the close of defendants' case, the trial court refused defendants' request to instruct the jury on the litigation privilege finding there was no evidence, at the time the statements were made, that anyone contemplated litigation or that attorneys were involved.

"The litigation privilege protects a 'publication or broadcast . . . [¶] . . . [¶] (b) In any . . . (2) judicial proceeding . . . .' [Citation.]  The privilege applies to 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) to have some connection or logical relation to the action. [Citations.]' [Citations.]" (*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 919, citing Civ. Code, § 47, subd. (b).)

One longstanding requirement under Civil Code section 47, subdivision (b) is that to fall within the privilege, communications must bear "some relation" to an anticipated lawsuit. (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1194.)  That is, "a prelitigation statement is protected by the litigation privilege of section 47, subdivision (b) when the statement is made in connection with a *proposed litigation that is 'contemplated in good faith and under serious consideration*. [Citation.]' [Citations.]" (*Aronson v. Kinsella*

18

(1997) 58 Cal.App.4th 254, 262, italics added.) " '[T]he good faith, serious consideration of litigation test is not . . . a test for malice and it is not a variation of the "interest of justice" test.' [Citation.] Rather, it is 'addressed to the requirement the statements "have some connection or logical relation to the action. [Citations.]' [Citation.] Thus, if the statement is made with a good faith belief in a legally viable claim and in serious contemplation of litigation, then the statement is sufficiently connected to litigation and will be protected by the litigation privilege. [Citation.] If it applies, the privilege is absolute. [Citation.]" (*Blanchard v. DIRECTV, Inc., supra*, 123 Cal.App.4th at p. 919.)

Here, none of the four acts at issue is protected by the litigation privilege because none was made in serious contemplation of litigation. The only testimony defendants point to as evidence of contemplated litigation is (1) Ekizian's statement, in response to inquiry about the purpose of a meeting between the parties, "I went there to see what kind of a solution we can find, and I told them that *I am not a trial person or* litigation. [¶] *I don't want any kind of litigation*;" and (2) Ekizian's friend Ken Hounsell's statement that meetings were held "to work out whatever the problems were in such a way that this case *would not head for litigation . . . .*" (Italics added.) These statements are not connected to anticipated or proposed litigation. As defendants' attorney acknowledged to the trial court, these statements were made *to avoid* litigation. Therefore, defendants have not demonstrated that the statements have a sufficient connection to litigation to cloak them with the protection of Civil Code section 47, subdivision (b).

Another "issue in determining if the litigation privilege applies is whether the alleged injury arises from a communicative act or noncommunicative conduct. [Citation.] 'The distinction between communicative and noncommunicative conduct hinges on the *gravamen of the action*. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an *act that was communicative in its essential nature*. [Citations.] The following acts have been deemed communicative and thus protected by the litigation privilege: attorney prelitigation solicitations of potential clients and subsequent filing of pleadings in the litigation [citation], and testimonial use of the contents of illegally overheard conversation

19

[citation].  The following acts have been deemed noncommunicative and thus unprivileged: prelitigation illegal recording of confidential telephone conversations [citation]; eavesdropping on a telephone conversation [citation]; and physician's negligent examination of patient causing physical injury [citation].'  [Citation.]"  (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1248.)

Two of the four relevant acts are Ekizian's *refusals to sign* the covenant of community driveway and the retaining wall permit.  In addition to being unprotected because not made in serious contemplation of litigation, such refusals to sign are not protected because their essential nature is noncommunicative.  (See *Action Apartment Assn., Inc. v. City of Santa Monica, supra,* 41 Cal.4th at p. 1248.)

Defendants observe that the litigation privilege encompasses statements made in connection with proceedings before administrative bodies and quasi-judicial proceedings, as well as statements made to initiate official action.  (*Wise v. Thrifty Payless, Inc*. (2000) 83 Cal.App.4th 1296, 1303 [statements defendant made to the Department of Motor Vehicles about plaintiff's fitness to drive are privileged in the context of the parties' divorce].)  "An absolute privilege exists to protect citizens from the threat of litigation for communications to government agencies whose function it is to investigate and remedy wrongdoing.  [Citation.]"  (*Ibid.*)  However, the two communicative acts constituting the basis for plaintiff's lawsuit are statements defendants *made to plaintiff and her agents,* not *to* any City agency or *in* any quasi-judicial proceeding.  In short, because none of the four claimed acts of interference is protected by the litigation privilege, and because defendants invited any error, the trial court did not err in refusing to instruct the jury from Civil Code section 47, subdivision (b).

C.  *The parties' discussions were not an attempt to settle and so were not protected by Evidence Code section 1152*.

Next, defendants cite to plaintiff's claim that Ekizian made what she felt were extortionate demands for money before he would sign the covenant for community driveway, and his insistence that plaintiff must buy her easement from defendants.  These statements, defendants argue, were inadmissible because they "came out of settlement

20

negotiations[, e]ither to resolve the city investigation or the contemplated litigation." The trial court ruled that these statements were "demands" and not offers to compromise anything. The court found these demands did not constitute offers to compensate plaintiff for damages she claimed to have suffered.

Statements made during settlement negotiations are inadmissible to show liability. (*Simandle v. Vista de Santa Barbara Associates, LP* (2009) 178 Cal.App.4th 1317, 1323, citing Evid. Code, § 1152, subd. (a).)[4] " 'In considering whether a person's statement amounts to an ordinary admission or constitutes an offer of compromise, the intention of the party is dispositive.' [Citation.] If the statement was not intended as a concession but as an assertion of ' " 'all that he deemed himself entitled to,' " ' it is not an offer of compromise. [Citation.]" (*Volkswagen of America, Inc. v. Superior Court* (2006) 139 Cal.App.4th 1481, 1494.) Thus, "a letter itemizing what the sender thinks the recipient owes him or her and demanding payment, even under threat of legal action, is, in effect, a bill and *not an offer in settlement* or a document in settlement negotiations excludable under section 1152 and 1154." (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1477, italics added.)

A fair reading of the testimony defendants cites shows that Ekizian's refusal to sign documents and his requests that plaintiff pay him were intransigent demands; not concessions, or proposals to compensate plaintiff for her harm, and hence not offers in compromise. The trial court did not abuse its discretion in allowing the jury to hear the cited testimony.

---

**4**      Evidence Code section 1152, subdivision (a) reads, "Evidence that a person has, in compromise or from humanitarian motives, furnished or offered or promised to furnish money or any other thing, act, or service to another who has sustained or will sustain or claims that he or she has sustained or will sustain loss or damage, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove his or her liability for the loss or damage or any part of it."

21

D. *The trial court did not err in awarding plaintiff damages for a continuing nuisance through the date the nuisance was abated.*

Defendants contend that the trial court erred by "allowing proof of damages through . . . trial," where plaintiff's theory was that defendants committed a "continuing nuisance," for which the only recoverable damages are those that were incurred before she commenced her action.

Defendants have not cited us to any place in the record where they moved to preclude admission of these damages; they do not cite to a motion in limine to exclude, or an objection to, this evidence. It is defendants' burden as appellants to point us to the portions of the record demonstrating they preserved this issue for appeal. We will not search the record on their behalf. (*Guthrey v. State of California*, *supra*, 63 Cal.App.4th at p. 1115.) It is only in their motion for new trial that defendants belatedly raised the issue of improper admission of evidence. Accordingly, defendants have forfeited the issue. (See *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726 [failure to object to evidence admitted by the trial court forfeits on appeal the argument such evidence was inadmissible because inter alia, the "[l]ack of such objection deprives the proponent of the evidence an opportunity to establish a better record or some alternative basis for admission."].)

Despite the forfeiture, we nonetheless conclude the trial court did not err in admitting the challenged evidence. "The owner of the easement whose rights have been impeded can recover damages, which are measured in the same manner as are those for a nuisance." (6 Miller & Starr, Cal. Real Estate, *supra*, § 15:72, p. 15-238, fn. omitted.) The measure of damages depends on whether the nuisance is permanent or continuing. (8 Miller & Starr, Cal. Real Estate, *supra*, § 22:21, p. 22-89.) "The test of whether the nuisance is permanent or continuing is whether the condition can be abated at any time by reasonable and feasible means and at reasonable cost . . . ." (*Ibid.*) "[P]ermanent nuisances are of a type where ' "by one act a permanent injury is done, [and] damages are assessed once for all." ' [Citations.]" (*Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 868-869 (*Baker*).) By contrast, "[a] continuing nuisance

22

is one that is ongoing and repeated, varies over time, and can be discontinued." (8 Miller & Starr, *supra*, at p. 22-89.) Damages for a permanent nuisance are measured by the diminution in value of the real property interest or the cost of repair. (*Id*., § 22:22, pp. 22-91 to 22-92.) Both past and future damages may be awarded for a permanent nuisance. (*Id*. at p. 22-92.) Damages recoverable for a continuing nuisance are limited to the recovery of the costs of abatement and the loss of use value during the existence of the nuisance and sometimes lost profits. (*Id*. at pp. 22-93 to 22-94.) Thus, "[r]ecovery in a continuing nuisance case is always limited to accrued, as opposed to prospective, damages, whereas in a permanent nuisance action both accrued and prospective damages may be recovered." (*Renz v. 33rd Dist. Agricultural Assn*. (1995) 39 Cal.App.4th 61, 67 (*Renz*).) Plaintiff's theory was that defendants' four acts of interference constituted a "continuing nuisance."

Defendants posit that plaintiff's damages are therefore limited to the injury she suffered up to the date she filed her complaint and so would not include damages for defendants' refusal to sign permission for the retaining wall permit, as plaintiff only requested that permission after the trial court rendered its declaratory relief ruling. For this, defendants rely on *Baker, supra,* 39 Cal.3d 862, that for a continuing nuisance "persons harmed by it may bring successive actions for damages until the nuisance is abated. [Citation.] *Recovery is limited, however, to actual injury suffered prior to commencement of each action.* Prospective damages are unavailable." (*Id*. at p. 869, italics added.) Defendants argue that based on this Supreme Court precedent, the trial court here erred in allowing the admission of evidence of plaintiff's damages that were incurred after September 2004, when plaintiff filed her complaint.

However, as explained in *Renz, supra,* 39 Cal.App.4th at pages 65 to 68, we are not bound by the italicized sentence in *Baker*. The defendant in *Renz* had relied on *Baker* to argue that the plaintiffs were only entitled to recover damages for the period before commencement of their lawsuit. (*Id*. at p. 65.) Explaining that the only issue *Baker* actually addressed was whether the action was barred by the statute of limitations, *Renz* concluded that *Baker's* statement about the accrual of damages was dicta and

23

unsupported by authority, with the result the appellate court was not bound by it. (*Id*. at pp. 67-68.) Absent the *Baker* language, *Renz* explained that "it is clear that damages incurred *between the commencement and the conclusion of a continuing nuisance action* should be recoverable in that action because under Civil Code section 3283, " '[d]amages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof . . . .' " (*Renz,* at p. 68, italics added.) Finally, both the majority and the concurrence in *Renz* reasoned that, in the case of a continuing nuisance where damages are incurred between the commencement and *completion* of the action, under *Baker*, plaintiffs would be forced to bring successive actions until the nuisance was abated, requiring repetitive litigation. That result is "not in the interests of justice and judicial economy." (*Renz,* at pp. 68 & 69-70 (conc. opn. of Bamattre-Manoukian, J.).)

Here, the trial court properly if impliedly followed the *Renz* analysis to allow plaintiff to recover the damages she incurred after she filed her lawsuit in September 2004 until the date of trial. The language in *Baker* purporting to limit damages to the date of the complaint is dicta and unsupported by authority, whereas the holding in *Renz* relying on Civil Code section 3283, that a plaintiff may recover damages incurred after commencement of the action up to the cessation of a continuing nuisance (*Renz, supra,* 39 Cal.App.4th at p. 68) is squarely on point. As the trial court here noted, this lawsuit was protracted, lasting six years; defendants could have at any time stopped the nuisance by signing the covenant for community driveway, but they refused, thereby causing plaintiff to suffer continuous harm starting before she filed her complaint. It is unrealistic, a waste of judicial resources, and contrary to the interests of justice to require plaintiff to file repeated and successive lawsuits for each instance of obstruction and after each demand over the course of six years.

Defendants reply by observing that in *Santa Fe Partnership v. Arco Products Co*. (1996) 46 Cal.App.4th 967, the Second District considered itself bound by the *Baker* language that *Renz* called dicta. (*Id*. at p. 977-978.) However, the issue in *Santa Fe Partnership* was whether a continuing nuisance plaintiff could recover damages for diminution in value. (*Id*. at p. 973.) Division Seven of this District Court of Appeal cited

24

cases "holding California law does not allow future or prospective damages, including diminution in value damages in a continuing nuisance case" (*id*. at p. 977) and "reject[ed] appellants' request to create new law to permit recovery of diminution in value damages in a continuing nuisance case." (*Id*. at p. 978.) *Santa Fe Partnership* never mentioned *Renz*. In any event, here, the trial court effectively followed *Santa Fe Partnership* when it stated, where this was not a future damages case, that the jury award to plaintiff of $600,000 in diminution in value damages was unsupported, and reduced plaintiff's award by that amount. In sum, defendants failed to demonstrate trial court error.

IX. *The trial court did not err in holding defendants jointly and severally liable for plaintiff's damages*.

Citing Corporations Code section 17158, defendants contend that Ekizian cannot be held personally liable for the judgment because all of the actions he undertook were as manager of defendant Diramesi Investments, LLC. Defendants argue there was no showing that Ekizian personally committed "anything fraudulent or criminal."

Corporations Code section 17158, subdivision (a) reads, "No person who is a manager or officer or both a manager and officer of a limited liability company shall be personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the limited liability company, whether that liability or obligation arises in contract, tort, or otherwise, *solely by reason of being a manager* or officer or both a manager and officer of the limited liability company." (Italics added.)

We held in *People v. Pacific Landmark, LLC* (2005) 129 Cal.App.4th 1203 (*Pacific Landmark*) that Corporations Code section 17158 does not insulate managers of limited liability companies from personal liability if they participated in the tortious or criminal conduct while performing duties as managers. We affirmed the trial court's judgment holding the property manager personally liable for failing to abate the nuisance created by the limited liability corporation while he was manager. We reasoned "whereas managers of limited liability companies may not be held liable for the wrongful conduct of the companies *merely because of the managers' status*, they may nonetheless be held accountable under Corporations Code section 17158, subdivision (a) for their *personal*

25

*participation in tortious or criminal conduct*, *even when performing their duties as manager*." (*Pacific Landmark*, *supra*, 129 Cal.App.4th at p. 1213, italics added.)

Here, the record shows that the judgment was not imposed on Ekizian *personally* solely because of his status as owner of Diramesi Investments, LLC. Instead, the evidence showed that Ekizian was personally involved in the acts of interference. The record shows that *Ekizian* refused to sign the covenant for community driveway; and *Ekizian* refused to sign permission for the retaining wall permit. Defendants' summary contention that there is no showing Ekizian did anything tortious is simply not supported by the record.**]]**

**[[End nonpublished portion]]**

26

DISPOSITION

The judgment is affirmed.  Plaintiff is to recover costs on appeal.

**CERTIFIED FOR PARTIAL PUBLICATION**

ALDRICH, J.

We concur:

CROSKEY, Acting P. J.

KITCHING, J.

27



EXHIBIT A

28