Filed 1/12/24  Blanco v. Cargasacchi CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| HENRY BLANCO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>GIOVANNI CARGASACCHI,<br>Individually and as Trustee,<br>etc., et al.,<br><br>    Defendants and<br>Respondents. | 2d Civil No. B324397<br>(Super. Ct. No. 17CV04672)<br>(Santa Barbara County) |

Henry Blanco appeals from the judgment after the trial court concluded he must comply with the terms of a memorandum signed in 1990 (the 1990 memorandum) before securing permits necessary for completing the construction of a residence in the Lakeview Estates development of the Santa Ynez Valley.  He contends the court erred in finding that the 1990 memorandum terminated an easement granted in 1968 to his predecessor-in-interest (the 1968 easement).  He also

contends the court erred in finding that he could not improve an existing road that runs over the 1968 easement, requiring him instead to construct a new road to secure his desired permits per the terms of the 1990 memorandum. And lastly, Blanco claims the court's findings amount to an unconstitutional taking. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In 1968, a previous owner of Blanco's property recorded "[a]n easement and right-of-way . . . for road purposes[] on, over[,] and across a strip of land" owned by the Cargasacchi family.[1] Nineteen years later, the Cargasacchis and Lakeview Estates landowners signed a document specifying that the 1968 easement was 30 feet wide and available for all Lakeview Estates landowners to use (the 1987 clarification). The clarification also reaffirmed the terms of the 1968 easement: "Except as expressly clarified and expanded herein, all terms, conditions[,] and stipulations of [the 1968 easement] shall remain in full force and effect and are hereby confirmed as such."

In 1990, the Cargasacchis, Lakeview Estates landowners, and owners of an adjacent plot of land, Rancho Dos Mundos, signed the 1990 memorandum. This memorandum specified the location of a 30-foot-wide easement across the Cargasacchis' land, and required Lakeview Estates and Rancho Dos Mundos landowners to "release all other easements or other rights that lie outside [the 1990] easement, and . . . release and quitclaim all

---

[1] The Cargasacchi Family Trust; the estate of Giovanni Cargasacchi; John M. Cargasacchi; Laura Teresa Cargasacchi Belluz, as trustee of the Laura Teresa Cargasacchi Belluz Separate Property Trust; Mark J. Cargasacchi; and Peter A. Cargasacchi.

other rights and claims across" Cargasacchi lands. The memorandum permitted the construction of a paved road across the easement (the 1990 road), but allowed landowners to continue using the road crossing the 1968 easement until the 1990 road was completed. They could not "materially increase the burden or impose new or additional burdens [on] the easement," however. The signing parties acknowledged that the 1990 memorandum "result[ed] in the relocation of the [1968] easement," but that all other "terms, conditions[,] and stipulations of [that easement] and [the 1987 clarification would] remain in full force and effect."

In 1998, the prior owner of Blanco's property, the Marks family, obtained a permit from the County of Santa Barbara (the County) to build a residence. They commenced construction of the residence, which continued until it was about 90 percent complete. At that point, the County ordered the Markses to stop construction until the 1990 road was completed.

In 2004, the Cargasacchis agreed to permit the Markses to increase the use of the 1968 easement, as clarified in the 1987 clarification and 1990 memorandum, to allow them to finish the construction of their residence (the 2004 agreement).[2] This increase in the use of the easement did not allow the Markses to change or alter the road crossing the 1968 easement, however, and required them to stop using it once the 1990 road was useable.

After Blanco acquired the Markses' property in 2012, County officials told him he would need to widen and add

---

[2] The 2004 agreement was admitted into evidence, but the trial court did not rely on it in its decision. Neither do we; we describe it only for context.

3

compacted gravel to the road leading to his residence before it would issue the permits necessary to finish construction. This required Blanco to show that the Cargasacchis had granted him "the authority to alter and improve" the road crossing the 1968 easement. The Cargasacchis refused to grant that authority, claiming that Blanco instead had to construct the 1990 road to meet County standards.

Blanco sued the Cargasacchis for quiet title and declaratory relief.[3] The trial court rejected Blanco's claims. It concluded the 1990 memorandum "expressly rejects the [1968] easement, substitutes it for the new road, and identifies a new location . . . with specific requirements and dimensions." The road crossing the 1968 easement could not be updated to County standards because if Blanco were "permitted to go forward with the improvements of" it the easement "would no longer be 'old.'" Instead, it would "essentially [become] the new easement road, semi-permanent and fully operational, with no future transition realistically possible," rendering the 1990 memorandum's requirements "ephemeral." The court concluded that the road crossing over the 1968 easement must be "phased out," and Blanco must build a new road to finish construction of his Lakeview Estates property.

DISCUSSION

*Termination of the 1968 easement*

Blanco first contends the trial court erred in finding that

---

[3] Blanco also petitioned the trial court to issue a writ of mandate to compel the County to issue the permits. The court denied Blanco's petition, and we affirmed the judgment on appeal. (See *Blanco v. County of Santa Barbara* (Oct. 18, 2021, B308340) [nonpub. opn.] [2021 WL 4839083].)

4

the 1990 memorandum terminated the 1968 easement. We do not resolve this contention.[4] As explained below, even if the 1968 easement were not terminated the terms of the 1990 memorandum do not permit Blanco to improve the road crossing it.

*Improvement of the road crossing the 1968 easement*

Blanco next contends the trial court erred in finding that he could not improve the road crossing the 1968 easement and instead had to construct and improve the 1990 road to secure building permits from the County. We are not persuaded.

Interpreting the 1968 easement, 1987 clarification, and 1990 memorandum presents a question of law subject to our independent review. (*Beyer v. Tahoe Sands Resort* (2005) 129 Cal.App.4th 1458, 1470.) Standard principles of contract interpretation apply. (*Hill v. San Jose Family Housing Partners, LLC* (2011) 198 Cal.App.4th 764, 777.) Our "paramount goal . . . is to determine the intent of the parties." (*Ibid.*) We ascertain that intent "from the language of the [documents] alone" so long as it is " 'clear and explicit, and does not involve an absurdity.' " (*Ibid.*) We read the documents "together, so as to give effect to every part." (Civ. Code, § 1641.) The language of the documents, "or the nature of the enjoyment by which it was acquired," defines the extent of the easement granted. (Civ. Code, § 806.)

The trial court here correctly interpreted the language of the relevant documents. The 1968 easement granted Blanco's predecessor-in-interest a right-of-way "for road purposes" over

---

[4] We also do not resolve Blanco's assertion, not raised during the proceedings below, that he acquired a prescriptive easement if the 1990 memorandum terminated the 1968 easement.

5

Cargasacchi family lands.  The 1987 clarification specified that the easement was 30 feet wide.  The 1990 memorandum relocated that easement and required Lakeview Estates landowners to build a new road.  It also required landowners to "*release all other easements or other rights that lie outside [the 1990] easement*," and prevented them from "*materially increas[ing] the burden or impos[ing] new or additional burdens [on] the [1968] easement*." (Italics added.)  Read together, these documents indicate that Blanco could not improve the road crossing over the 1968 easement, as the trial court correctly concluded.

Blanco complains that this conclusion runs counter to long-established laws governing easements.  He first cites *Dolnikov v. Ekizian* (2013) 222 Cal.App.4th 419, 428 (*Dolnikov*), for the proposition that " '[e]very easement includes what are termed "secondary easements," ' " including "the right to make 'repairs, renewals[,] and replacements on the property that is servient to the easement' [citation] 'and to do such things as are necessary to the exercise of the right' [citation]."  But a secondary easement cannot " 'increase the burden on . . . the servient tenement, or make any material changes therein.' " (*Id.* at p. 429.)  Rather, such an "easement may be exercised 'only when necessary and in such reasonable manner as not to increase the burden needlessly on the servient estate or to enlarge it by alteration in the mode of operation.' " (*Ibid.*)

Here, Blanco does not seek to make repairs necessary to exercise his right to use the road crossing over the 1968 easement.  Instead, he seeks to improve the road to meet County standards—improvements that will require laying thousands of tons of compacted gravel, materially enlarging the road and significantly increasing the burden on the Cargasacchis' land.

These improvements are not needed for any dominant tenement owners—including Blanco—to use the right of way, but rather are required so that the County will issue the permits he needs to complete construction of his home. In our view, such improvements are outside the scope of any secondary easements included in the 1968 easement. (*Dolnikov, supra*, 222 Cal.App.4th at p. 429 [only " ' "changes that do not affect [the] substance" ' " of an easement are permitted].)

Blanco next relies on *Kosich v. Braz* (1967) 247 Cal.App.2d 737 to claim that he had the right to improve the 1968 easement. But as the *Kosich* court noted, "a purchaser of real property in fee takes the property subject only to the servitude *which [they] know[] or should know*." (*Id.* at p. 740, italics added.) There, the appellants knew that the easement at issue had been enlarged, and they impliedly consented to that enlargement. (*Ibid.*) But here, Blanco points to no evidence that the Cargasacchis knew of or consented to the improvement of the road crossing over the 1968 easement. The 1990 memorandum shows the opposite: It requires Blanco to "release all other easements or other rights that lie outside [the 1990] easement, and . . . release and quitclaim all other rights and claims across" Cargasacchi lands.

*Zissler v. Saville* (2018) 29 Cal.App.5th 630 similarly does not aid Blanco. In *Zissler*, this court explained that "the parties to an express right-of-way easement presumptively contemplate 'normal future development,' " meaning that "such an easement will generally not be restricted to its historic use." (*Id.* at p. 641.) We cautioned, however, that " ' "uncontemplated, abnormal uses[] [that] greatly increase the burden [on the easement] are not" ' " within the realm of "normal future development." (*Ibid.*) What is paramount is the intent of the parties: i.e., an "easement may be

used to the extent that the use is reasonably necessary for the convenient enjoyment of the easement and *is consistent with the purpose for which the easement was granted.*" (*Id.* at pp. 645-646, italics added.)

Unlike *Zissler*, this case is about improving an easement, not increasing its use. The 1968 easement was granted for road purposes, to permit Lakeview Estates and Rancho Dos Mundos landholders ingress to and egress from their properties. But the documents defining the purpose of the easement do not suggest that landholders can materially improve the road crossing it to meet County standards, as Blanco seeks to do here. To the contrary, the documents expressly restrict landholders from "materially increas[ing] the burden or impos[ing] new or additional burdens [on] the easement." And they impliedly exempt improvements of the road crossing the 1968 easement from the realm of "normal future development" by permitting the construction of a paved road across the 1990 easement. Such limitations distinguish the easement at issue in this case from the unrestricted easement at issue in *Zissler*.

Blanco argues that improving the road crossing over the 1968 easement will not increase the burden on the easement. But this argument ignores testimony that the improvements required by the County would require laying several inches of gravel on the road and the trial court's finding that such improvements would be "significant." And it ignores the fact that improving the road crossing over the 1968 easement would undermine the 1990 memorandum's purpose of delineating future road development.

Blanco also complains that preventing him from improving the road crossing over the 1968 easement forces him to bear the

8

"onerous burden" of building the 1990 road himself, something not contemplated by the 1990 memorandum. We disagree that the 1990 memorandum forces Blanco alone to shoulder this burden. The memorandum does state that Lakeview Estates and Rancho Dos Mundos landowners "shall" form an assessment district to pay for the "costs of design, construction[,] and maintenance of the [1990] road." But it puts no timeline on when the landowners must do so. And it contemplates that such a district may not be formed: "If such a funding mechanism is not established, then [the landowners] will make every effort to ensure that each of [them] will individually have [their] own homeowner's policy extended to include the [1990] road easement and to name [the Cargasacchis] as additional insureds."

*Unconstitutional taking*

Finally, Blanco contends the trial court's decision to "phase out" the 1968 easement constitutes a taking without just compensation. Blanco did not raise this contention below, and we do not resolve it. (*People v. Harrison* (2013) 57 Cal.4th 1211, 1229 [constitutional arguments forfeited on appeal if not raised at trial].)

DISPOSITION

The judgment is affirmed. The Cargasacchis shall recover their costs on appeal.

NOT TO BE PUBLISHED.


BALTODANO, J.

We concur:


GILBERT, P. J.          CODY, J.

9

Timothy J. Staffel, Judge

Superior Court County of Santa Barbara

_____

Garrett & Tully, Ryan C. Squire and Nicholas D. Lauber for Plaintiff and Appellant.

Law Offices of E. Patrick Morris and E. Patrick Morris for Defendants and Respondents.