Filed 12/29/21  Acornhill Investments v. Pan City Plaza  CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ACORNHILL INVESTMENTS, LLC, et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> PAN CITY PLAZA, LLC, et al., <br><br> Defendants and Respondents. | B305473 <br><br> (Los Angeles County Super. Ct. No. LC100782) |
| PAN CITY PLAZA, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ACORNHILL INVESTMENTS, LLC, <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. LC104819) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge. Affirmed.

Randall A. Spencer for Plaintiffs and Appellants.

Law Offices of Terence M. Sternberg and Terence M. Sternberg for Defendants and Respondents.

———————————

Appellants on the one hand, and respondents on the other, own neighboring commercial building properties each with their own parking lot. Appellants' parking lot is small and landlocked, while respondents' parking lot is large and has an entrance off Van Nuys Boulevard. The only way to access appellants' landlocked small parking lot is via the driveway through and on respondents' large parking lot. Appellants hold an easement over respondents' large parking lot to access the small parking lot; this easement was created by a covenant and agreement signed by previous owners of both properties.

Immediately prior to appellants' purchase of the commercial building with the small parking lot, respondents narrowed the width of the driveway from 20 feet to 11 feet 8 inches. Appellants contend respondents were precluded from reducing the 20-foot width of the driveway. Respondents argue the law requires the width of the driveway to be a minimum of 9 to 10 feet.

After a bench trial, the trial court ruled in favor of respondents, and ordered the driveway width be increased by one foot, making it 12 feet 8 inches. Appellants appeal the judgment.

We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Relevant Factual Background*

In 1981, Clyde and Sandra Mitchell owned three properties: 1) a commercial building with a small parking lot directly behind it, located at 8737 Van Nuys Boulevard in Panorama City, California (8737 property); 2) a commercial building located at 8727 Van Nuys Boulevard in Panorama City, California (8727 property); and 3) a large parking lot—located between the two commercial buildings—with a driveway opening onto Van Nuys Boulevard. The only way to access the small parking lot behind the 8737 property is via the driveway on the large parking lot.

The Mitchells sold the 8737 property with the small parking lot to Paul and Edith Cohen. Upon completion of the sale, the small parking lot was going to become landlocked, as the Mitchells retained ownership of the large parking lot with the driveway that provided the only access to the small parking lot. Thus, the City of Los Angeles required the Mitchells to enter into three agreements/covenants, all recorded with the County Recorder's Office on November 6, 1981, as follows:

The first covenant and agreement was for a "community driveway." The respective owners of the 8727 and 8737 properties "covenant and agree . . . to establish and maintain . . . a common or community driveway for ingress and egress to each [p]arcel and general driveway purposes over the entirety of the area." The covenant was created "to comply with Section [12.21(A)(4)(h)] of the Los Angeles Municipal Code relating to required access to automobile parking spaces." This covenant and agreement "shall run with the land and shall be binding upon" the owners and all parties acquiring any right, title, or

3

interest in the properties in the future.

The second covenant and agreement provided that the 8737 property with the smaller lot has the right to use 10 parking spaces in the large parking lot. This covenant and agreement also runs with the land and is binding upon current and future owners of the properties and their successors, heirs, or assignees.

The third covenant and agreement provided that the 8727 property has the right to use 18 parking spaces in the large parking lot. This covenant and agreement also runs with the land and are binding upon current and all future owners of both properties and their successors, heirs, assignees.

In 1994, the Cohens transferred their interest in the 8737 property with the small parking lot to the Cohen Family Trust (Cohen Trust).

In 1999, the Cohen Trust built a disabled person's parking space in the large parking lot, in compliance with the Americans with Disabilities Act (ADA). Thereafter, the 8737 property owned by the Cohen Trust used 10 parking spaces and one ADA parking space in the large parking lot, with the consent of the owners of the large lot.

Ten years later, in 2009, the successors to the Mitchells sold the 8727 property and the large parking lot to Pan City Plaza, owned by Daryoush Kashani, M.D. At time of purchase, there were 26 parking spaces on the large parking lot. We collectively refer to Pan City Plaza and Kashani as respondents.

On March 16, 2012, a lawsuit between the Cohen Trust and EilEil, LLC (Pan City Plaza's immediate predecessor) settled pursuant to terms of the "Deal Memo." The Deal Memo required the Cohens to remove their ADA parking spot from the large parking lot and reinstall it in the small parking lot.

In May 2013, the Cohen Trust sold the 8737 property with the small parking lot to Acornhill Investments. Acornhill then leased the property to cardiologist Ravi Gupta, who used it as a medical office. We collectively refer to Acornhill and Ravi Gupta, M.D., Inc., as appellants.

B. *Appellants' Civil Action*

On September 12, 2013, appellants filed a complaint against respondents and EilEil, LLC, alleging causes of action for declaratory relief, breach of contract, breach of covenant of good faith and fair dealing, negligence per se, fraud, and negligence. Appellants sought punitive damages and attorney fees. Appellants' complaint included the following allegations:

Appellants acquired and/or leased the 8737 property "in total and complete reasonable reliance upon the recorded Covenants and Agreements." For approximately 31 years, "the owners, tenants and visitors of the 8737 property continually, visibly, openly and without objection used" the parking spaces in the large parking lot.

However, within the few months preceding appellants' acquisition of the 8737 property, respondents, "contrary to the Covenants and Agreements entered into in 1981", added an electric gate separating the small parking lot from the large parking lot with the driveway, "thereby barring and blocking the sole entrance and exit to and from the small parking lot." Respondents erected a metal fence on the property which hindered access from the large parking lot to the 8737 property. Respondents gave appellants two electronic clickers for their staff and visitors to access the small parking lot. This was done "without justification or any advance notice" to appellants.

5

Appellants argued respondents "breached the terms and conditions of the Covenants and Agreements." Appellants believed "they are entitled to enforce the terms and conditions of the Covenants and Agreements and the open, obvious and established use" of the properties, which required removal of the electronic gate to provide appellants "unfettered access to the small parking lot", and removal of the fence separating the large parking lot from the 8737 property, to provide appellants "unfettered use of the [11] parking spaces."

Appellants requested a judicial determination of the parties' rights/obligations as it pertains to the covenants and agreements as well as damages, attorney fees and costs, and interest at the legal rate.

On December 3, 2013, respondents filed their first amended answer to the complaint, denying the relevant allegations and asserting 10 affirmative defenses.

EilEil, LLC was dismissed from the case.

C. *Preliminary Injunction and Supplemental Orders*

On January 9, 2014, the court issued a preliminary injunction, ordering respondents to "remove the fence and electronic gate" located on appellants' property.

Appellants and their successors-in-interests were awarded "exclusive use of not less than ten (10) parking spaces in the common usage parking lot located between the 8727 and 8737 properties." Respondents and their successors-in-interests were awarded "exclusive use of not less than eighteen (18) parking spaces in the common usage parking lot." The remaining parking spaces in the common usage parking (including the ADA parking spot) "shall be available for usage by either property on a first come, first serve basis."

6

Respondents were ordered to "do nothing to unlawfully impede or stymie" appellants' use of their parking rights as well as their "ingress and egress over the entirety of the area to gain access to their parking lot behind the 8737 property." Appellants were awarded "the unimpeded right, without the need for [respondents'] approval, permission or concurrence, to contact [respondents'] towing company and have cars improperly parking in [appellants'] ten spaces towed from the common usage parking lot."

In January 2014, the court entered a supplemental order wherein it noted respondents "had not complied with the January 9, 2014 order requiring removal of the entire fence." The court empowered appellants to remove the fence.

The court issued a modification to the preliminary injunction, designating two parking spots from the large parking lot as exclusively for respondents' use as owners of the 8727 property.

In June 2014, appellants filed a motion to enforce and reinstate easement rights for egress and ingress through the driveway, claiming they had the right to a 20-foot-wide passageway as it existed in 2009 when respondents purchased the 8727 property. Appellants advised that because respondents added more parking spaces in the large parking lot, the width of the driveway to the small parking lot was reduced from 20 feet to 10 feet.

In August 2014, the court found that the language of the covenant and agreement as to the community driveway did not designate or specify the width of the driveway to and from the small parking lot. The court noted that "for approximately 30 years, the ingress and egress to the [large] parking lot was

7

approximately 20 feet and was narrowed down to 10 feet in 2012, prior to [appellants'] ownership of the property." The court also "noted that city ordinances require only a minimum of 10 feet" for the driveway. The court held that there was "no evidence that [appellants], their predecessor or anyone else used the easement for anything other than entering and exiting the parking lot." The court further held that appellants did not explain "how narrowing the ingress and egress has caused any impairment to its intended use."

In September 2014, respondents secured from the Los Angeles Department of Building and Safety an approved plan to increase the total number of parking spaces to 37.

In September 2015, the court authorized respondents to re-stripe the large parking lot in conformity with the approved plan, which eliminated one parking space, leaving a total of 36 spaces. The approved plan specified the width of the driveway between the large and small parking lots as 11 feet 8 inches.

D.      *Respondents' Civil Action*

On October 31, 2016, respondents filed a complaint against appellants for breach of contract, account stated, and to enjoin an encroachment. They requested damages, injunctive relief, and attorney fees and costs.[1]

---

[1]      In their opening brief, appellants present two arguments on appeal; neither raise issues about orders made as to respondents' complaint. For that reason, we do not delve into the details of respondents' complaint.

8

Appellants filed an answer generally denying the allegations. Appellants also filed a cross-complaint against respondents for breach of contract, breach of covenant of good faith and fair dealing, interference with contract, and negligence.

On January 25, 2017, respondents filed their answer to the cross-complaint, denying the allegations. They requested appellants' cross-complaint be dismissed in its entirety.

E.    *Consolidation of Two Actions*

On December 13, 2016, the court ordered both actions consolidated for all purposes, including trial.

F.    *Trial*

At a hearing on May 14, 2019, the court set the matter for trial, scheduled to commence August 27, 2019.

The parties provided an agreed statement of facts in lieu of live trial testimony. Both agreed to the following facts:[2] There are 36 parking spaces in the large parking lot, two of which are ADA compliant. The small parking lot has a total of seven spaces, one of which is ADA complaint. The covenants and agreements "run with the land and are enforceable by the respective successors" to the property owners.

On August 27, 2019, a two-day court trial commenced. The following relevant testimony was elicited.

1.    Daryoush Kashani's Testimony

Kashani purchased the 8727 property and the large parking lot which included "a covenant which, to [his]

---

[2]    In addition to the relevant factual background provided in part A above.

9

understanding, becomes an easement." The "8737 [property] has a right of passage", i.e., the "ability to pass through the lot and get into their lot."

The City of Los Angeles required the large parking lot to include 21 parking spaces for the 8727 property and the second covenant requires 10 parking spaces for the 8737 property. Technically, the commercial building at 8727 Van Nuys Boulevard is required "to have 50 parking spaces . . . . But since that area is an enterprise zone area, that requirement is exempt by the [Department of Building and Safety] to no more than . . . 21 [parking spaces]." That meant the lot needed a minimum of 31 parking spaces in the large parking lot (21 for the 8727 property and 10 for the 8737 property). Respondents restriped the lot to include 36 parking spaces.

Kashani "reduced [the passageway between the two parking lots] to more than the minimum legal requirement . . . for passageway[s]." The minimum requirement "is 9 feet or 10 feet", but the width of this passageway is 11 feet 8 inches. The width was reduced because "parking was a requirement" for the 8727 property; there was "an absolute need" for parking spaces.

The driveway on the large parking lot opening onto Van Nuys Boulevard has greater width than the driveway between the large and small parking lots. The large parking lot "requires two-way access in and out, and it is governed by number of parking spaces located in there." The minimum requirement for the driveway in the large parking lot is "19 or 20 feet" whereas the minimum requirement for the driveway to the small parking lot (with only seven parking spaces) is "9 or 10 feet" wide.

### 2.    Jim Farasatpour's Testimony

Farasatpour is a licensed civil and structural engineer for the State of California and is one of "the most famous civil engineer[s] in this area in this field."

He opined the large parking lot is "not fully" in compliance with the California Building Code. The parking spaces striped on the large parking lot did not conform to the plan that was submitted to the Department of Building and Safety. The dimensions of some of the parking spaces did not match what was written on the plan.

Although the driveway into the small parking lot measures 11 feet 8 inches wide, there is only 10 feet of space for a vehicle to drive through if a truck is parked in the parking space near the driveway, as "truck[s] often times protrude much beyond [the space]." The width of the access and driveway "is significantly grossly inadequate."

The ADA parking space in the small parking lot behind appellants' 8737 property "has to be a van access" which "requires must larger radius and larger access and backup space" than an ADA spot for car access. There is not enough space for a van to enter or park in that ADA parking space if there is a car parked near the driveway. While the driveway "can be as narrow as almost 10 feet," the backup space for the ADA parking spot requires more. Farasatpour relied on California Building Code section 11B-503.2, which provides: "Passenger *drop-off* and loading zones shall provide a vehicular pull-up space 96 inches . . . wide minimum and 20 feet . . . long minimum."

11

### 3. Hamid Dehghan's Testimony

Dehghan has a Master's Degree in architecture, an architect license since 2015 and a certificate of construction management since 2017.

Dehghan opined that Los Angeles Municipal Code[3] section 12.21(A)(5)(f)[4] deals with the width of the passageway and applies in commercial settings. The width of the driveway depends on the number of spaces to be accessed in that parking lot. "The width of the driveway should be a minimum ten feet, and if the number of the parking [spaces in] that driveway is more than 25, it should be increased to 19 feet" so as to allow for two-way traffic. He reasoned that because there are only seven parking spaces in the small parking lot behind the 8737 property, the width of the passageway to the small parking lot must be a minimum of 10 feet.

During closing argument, appellants argued respondents' actions in unreasonably limiting the width of the passageway to approximately 10 feet "undermines the very purpose for which the covenants were initially executed."

---

[3]     Further undesignated statutory references are to the Los Angeles Municipal Code.

[4]     Section 12.21(A)(5)(f) provides:  Every access driveway shall be at least 9 to 10 feet in width; provided however, every access driveway serving a parking area having a capacity of more than 25 automobiles or trucks shall be at least 19 feet in width, or in lieu thereof, there shall be two access driveways, each of which is at least 10 feet in width.

12

G.     *The Judgment*

On January 31, 2020, the trial court entered judgment. The judgment provided as to appellants' cause of action for declaratory relief:

Two ADA-compliant parking spaces in the large parking lot shall be for respondents' exclusive use.  None of the remaining parking spaces in the large parking lot shall be for the exclusive use of appellants or respondents.  The large parking lot shall be monitored by an attendant (employed by respondents, whose costs shall be shared by both owners) who will enforce the parties' respective parking rights.  Via a covenant, Acornhill is entitled to the non-exclusive use of 10 parking spaces in the large parking lot (but not the ADA-compliant parking spaces).  Six parking spaces shall be re-striped to a width of 8 feet 2 inches, which will widen the passageway from the large parking lot to the small parking lot "by a total of one foot"; the passageway shall not be narrowed without the written consent of the owner of the 8737 property with the small parking lot.  The owner of the 8727 property shall not construct a fence on the boundary of the adjacent property.  This portion of the judgment is binding upon all subsequent owners of the 8727 and 8737 properties and the large parking lot.

With respect to appellants' remaining causes of action, judgment was entered against appellants and in favor of respondents.

With respect to respondents' complaint in the consolidated action, judgment was entered against appellants and in favor of respondents.  Respondents were awarded the aggregate principal sum of $94,039.03, with interest thereon in the sum of $32,485.35.

13

With respect to appellants' causes of action in the cross-complaint in the consolidated action, judgment was entered against appellants and in favor of respondents.

Appellants timely appealed.

## DISCUSSION

Appellants make one primary argument on appeal. They argue the trial court "erroneously permitted the reduction of the width of an easement" that is contrary to the law and without appellants' consent.

### A.    *Applicable Law*

Generally speaking, an easement is a " 'restricted right to specific, limited, definable use or activity upon another's property, which right must be less than the right of ownership.' " (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702, italics omitted (*Scruby*).) The extent of a servitude is determined by the terms of the grant by which it was acquired. (Civ. Code, § 806.) "Where the easement is founded upon a grant . . . only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee. "The general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement." (*City of Pasadena v. California-Michigan Land & Water Co.* (1941) 17 Cal.2d 576, 579.) The owner of the dominant tenement must use his/her easements and rights in such a way so as to impose as slight burden as possible on the servient tenement. (*Scruby*, at p. 702.)

Civil Code section 1104 provides: "A transfer of real property passes all easements attached thereto, and creates in

14

favor thereof an easement to use other real property of the person whose estate is transferred *in the same manner and to the same extent as such property was obviously and permanently used* by the person whose estate is transferred, for the benefit thereof, *at the time when the transfer was agreed upon or completed*." (Italics added.) Once a covenant and agreement re easement is recorded, "the burdens of the covenant shall be binding upon, and the benefits of the covenant shall inure to, all successors in interest to the real property." (Gov. Code, § 65873.)

In construing an instrument conveying an easement, "the rules applicable to the construction of deeds generally apply. If the language is clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired." (*Scruby*, *supra*, 37 Cal.App.4th at p. 702.) If the language is ambiguous, extrinsic evidence may be used as an aid to interpretation unless such evidence imparts a meaning to which the instrument creating the easement is not reasonably susceptible. (*Ibid.*)

B.    *Standard of Review*

We exercise our independent judgment to interpret the language of an instrument granting easement rights and we review for substantial evidence the trial court's resolution of any conflicting extrinsic evidence. (*Pear v. City and County of San Francisco* (2021) 67 Cal.App.5th 61 (*Pear*).) Additionally, whether a particular use by the servient owner of land subject to an easement is an unreasonable interference with the rights of the dominant owner is a question of fact for the trier of fact, and its findings based on conflicting evidence are binding on appeal. (*Scruby*, *supra*, 37 Cal.App.4th at p. 703.)

15

C.    *Analysis*

We begin by exercising our independent judgment to interpret the language of the instrument creating easement rights, i.e., the first covenant and agreement.  The covenant expressly provided for a "community driveway."  It was a covenant "to establish and maintain . . . a common or community driveway for ingress and egress to each [p]arcel."  The covenant was created in order "to comply with Section [12.21(A)(4)(h)] of the Los Angeles Municipal Code relating to required access to automobile parking spaces."  This covenant runs with the land and is binding on all future owners, including appellants and respondents—a fact conceded by all.

Section 12.21(A)(4)(h),  expressly referred to in the covenant, provides:  "An access driveway shall be provided and maintained between each automobile parking space or area and a street, or alley, or a private street or easement approved in accordance with the provisions of Article 8 of this chapter.  Such access driveway shall be located entirely on the lot which it serves."  Nothing in this section, nor Article 8 of said chapter, provide any width requirements for driveways such as the one between the large parking lot and small parking lot.  If the scope or extent of an express easement is unclear, its use is to be measured rather by such uses as the parties might reasonably have expected from the future uses of the dominant tenement.  (*Pear*, *supra*, 67 Cal.App.5th at p. 71.)

The conveyance of an easement limited to driveway use grants a right of ingress and egress and a right of unobstructed passage to the holder of the easement.  (*Scruby*, *supra*, 37 Cal.App.4th at p. 703.)  A right-of-way to pass over the land of another carries with it the implied right to make such changes in

the surface of the land as are necessary to make it available for travel in a convenient manner. (*Dolnikov v. Ekizian* (2013) 222 Cal.App.4th 419, 428 (*Dolnikov*).) An obstruction which unreasonably interferes with the use of a roadway easement can be ordered removed for the protection and preservation of the easement. (*Scruby*, at p. 703.) However, the owner of a dominant tenement (appellants) must use their easement and rights in such a way as to impose as slight a burden as possible on the servient tenement (owned by respondents). (*Pear*, *supra*, 67 Cal.App.5th at p. 71; *Locklin v. City of Lafayette* (1994) 7 Cal.4th 327, 356, fn. 17.) An easement gives a nonpossessory and restricted right to a specific use or activity upon another's property. (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1174.)

The servient owner, here respondents, may use their property in any manner not inconsistent with the easement so long as it does not unreasonably impede the dominant tenants (i.e., appellants) in their rights. (*Dolnikov*, *supra*, 222 Cal.App.4th at p. 429.) Actions that make it more difficult to use an easement, that interfere with the ability to maintain and repair improvements built for its enjoyment, or that increase the risks attendant on exercise of rights created by the easement are prohibited unless justified by needs of the servant estate. (*Id.* at pp. 429–430.) In determining whether the holder of the servient estate has unreasonably interfered with exercise of an easement, the interests of the parties must be balanced to strike a reasonable accommodation that maximizes the overall utility to the extent consistent with effectuating the purpose of the easement. (*Id.* at p. 430.) The question before the trial court, as the fact-finder, was whether respondents' reduction of the driveway from 20 feet to 11 feet 8 inches amounted to an

17

unreasonable interference on appellants' use of the driveway as part of their rights of ingress and egress.

Here, in the declaratory relief portion of the judgment, the trial court made an order that six parking spaces in the large parking lot be re-striped to "widen the passageway" from the large parking lot to the small parking lot "by a total of one foot", making the width of the driveway from the large parking lot to the small parking lot 12 feet 8 inches. This means the trial court impliedly found that the width of the driveway—at that time 11 feet 8 inches—was not wide enough. Thus, the trial court impliedly found that respondents' reduction of the driveway to 11 feet 8 inches was an unreasonable interference with appellants' use of the driveway.

Whether encroachments in the easement area constitute an unreasonable interference with plaintiff's use presents a question of fact to be resolved in the first instance by the trial court, whose determination is to be upheld on appeal if supported by substantial evidence. (*Scruby*, *supra*, 37 Cal.App.4th at p. 703.) Here, the record is replete with substantial evidence supporting trial court's implied finding that respondents' reduction of the driveway to 11 feet 8 inches constituted an unreasonable interference with appellants' use of the driveway. Appellants' expert witness, Jim Farasatpour, opined that the width of the driveway "is significantly grossly inadequate." He also opined that there was not enough space for a van to enter or park in the ADA parking space in the small parking lot if a car is parked near the driveway.

However, appellants believe the trial court's ruling is erroneous in that the driveway should have been restored to its original width of 20 feet; they disagree with the trial court's

18

implied finding that the width of 12 feet 8 inches is adequate for the driveway between the large and small parking lots.

In support, appellants cite *Youngstown Steel etc. Co. v. City of L.A.* (1952) 38 Cal.2d 407 for the proposition that "[o]nce the location of an easement has been finally established, whether by express terms of the grant or by use and acquiescence, it cannot be substantially changed without the consent of both parties. [Citations.]  And the grantor has no right either to hinder the grantee in his use of the way or to compel him to accept another location, even though a new location may be just as convenient." (*Id.* at pp. 410–411.)  Appellants' support is misplaced as this case provides that relocating or changing the *location* of an easement (as opposed to changing the *width* of an easement) requires the consent of both parties.

Similarly, other cases cited by appellants, namely, *Tarr v. Watkins* (1960) 180 Cal.App.2d 362, 366 and *Ballard v. Titus* (1910) 157 Cal. 673, 681 are inapposite, as both cases stand for the proposition that where the width of a right of way is *expressly specified*, the owner may have the absolute right to use to the limits of the specified width even if that gives the owner a wider way than necessary.  Those cases do not apply here where the first covenant and agreement does not expressly specify or qualify the right to ingress/egress on the driveway with width dimensions.

Appellants refer to the Department of Building and Safety's Zoning Code Manual and Commentary, which provides the following information with respect to section 12.21(A)(4)(h): A community driveway "within such easement is improved to a width in conformance with the Fire Department's fire access standards . . . but in no event less than 20 feet."  (City of L.A.

19

Dept. of Building & Safety Zoning Code Manual & Com. (4th ed. 2021), pp. 149–150.)  While the zoning manual provides commentary that a community driveway shall be 20 feet wide, the fact remains that the law requires otherwise.  Section 12.21(A)(5)(f) provides that every access driveway shall be at least 9 to 10 feet in width, unless the access driveway serves a parking lot having a capacity of more than 25 automobiles or trucks, in which case the driveway shall be at least 19 feet in width.  Here, the evidence provides that the small parking lot contains seven parking spots (including the ADA spot); thus, the court-ordered driveway width of 12 feet and 8 inches is more than the required legal minimum width of 9 to 10 feet.  Substantial evidence supports the trial court's implied finding.

Additionally, appellants failed to provide any practical reason why the driveway should be widened from 12 feet 8 inches to 20 feet.  Appellants did not proffer evidence proving harm or damage because of a width of 12 feet 8 inches.  No evidence of accidents or other dangerous conditions.  No evidence that the court-ordered width created a material interference incompatible with use of the easement.  Appellants presented nothing to suggest that increasing the width of the driveway to 12 feet 8 inches is contrary to law.

Appellants rely heavily on the fact that respondents created 36 parking spaces in the large parking lot when they are legally required to have a minimum of 31 parking spaces.  Appellants contend the creation of 36 parking spaces contributed to the reduction of the driveway's width from 20 feet to 11 feet 8 inches.  The reasons prompting the reduction of the width of the driveway are, for our purposes, unimportant.  What matters is that the driveway now maintains its purpose and use by

appellants as an easement for ingress and egress, as defined by section 12.21(A)(4)(h).

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, Acting P. J.

We concur:

WILEY, J.

OHTA, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.