Filed 7/9/24  Grand View Real Property v. Kim CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GRAND VIEW REAL PROPERTY, LLC,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>BENJAMIN JOON TAE KIM, et al., as Trustees, etc.,<br><br>      Defendants and Appellants. | B326859<br><br>Los Angeles County<br>Super. Ct. No.<br>21STCV27246 |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge. Affirmed.

Culver Law Group and Justin D. Graham for Defendants and Appellants.

Luna & Glushon, Robert L. Glushon, Sean M. Bryn; Schwartz & Janzen and Noel E. Macauly for Plaintiff and Respondent.

# INTRODUCTION

This is a contentious dispute between neighboring property owners regarding the appropriate use of a driveway easement.[1] In 1966, the former owner of both neighboring properties recorded a covenant and agreement creating an easement for ingress, egress, and community driveway purposes in favor of both properties. The bulk of the easement burdens the property now owned by defendants and appellants Benjamin Joon Tae Kim and Jullie Myung, as Trustees of the Myung Kim Family Trust.[2] After the Trust acquired the property in mid-2020, it claimed the easement only allows the owner of the adjacent property, plaintiff and respondent Grand View Real Property, LLC (Grand View), to use the easement for ingress and egress.

Informal resolution of the issue failed and this litigation ensued. The court issued a preliminary injunction barring each party from interfering with the other party's property access rights and prohibiting Grand View from, among other things, parking vehicles in the driveway easement area for more than 72 hours. The Trust appeals, arguing the parking limit should be reduced to 30 minutes in the absence of the Trust's express permission and that it should only be prohibited from "unreasonably interfering" with Grand View's use of the easement. (The injunction currently bars *all* interference.)

We reject the Trust's contention that the court abused its discretion in imposing a 72-hour parking limit on Grand View.

---

[1] One of the properties would be landlocked but for the easement.

[2] We will refer to Kim individually when discussing his personal interactions with Grand View and its tenants. Otherwise, we will refer to appellants as the Trust.

We also conclude the court did not abuse its discretion in barring the Trust from interfering, in all respects, with Grand View's right to use the easement. Accordingly, we affirm the order issuing a preliminary injunction.

## FACTS AND PROCEDURAL BACKGROUND

### 1. The Driveway Easement

Armand Riza owned the adjoining lots located at 8416 Grand View Drive (Parcel B) and 8424 Grand View Drive (Parcel A). In 1966, Riza signed a four-page document titled "Covenant and Agreement for Community Driveway." The covenant reads in part:

"For the purpose of complying with the requirements of Los Angeles City Council Ordinance No. 111,049, effective May 2, 1959, amending Subdivision 4 of Subsection A of Section 12.21 of the Los Angeles Municipal Code, the undersigned hereby covenant and agree with the City of Los Angeles that the above legally described Parcels A and B of real property shall have established on and between them a common or community driveway described as follows:

"(See Attached Legal Description)[3]

"That in the event the undersigned owner shall sell or convey either Parcel A or Parcel B it is further covenanted and agreed said owners shall also grant to the grantee of the portion conveyed, for so long as this covenant shall remain in effect, the

---

[3] Page four of the Covenant includes a metes and bounds description of the driveway easement. Page three is a survey sketch showing the boundaries of Parcels A and B and the location of the driveway easement.

3

right to the joint use of that portion of the common or community driveway located upon the parcel which is retained in ownership, and said owners shall reserve in said grantors, their successors, heirs, and assigns for so long as this covenant shall remain in effect, the right to the use of that portion of the common or community driveway which is located upon the parcel so conveyed.

"This covenant and agreement shall run with the land and shall be binding upon ourselves, any future owners, encumbrancers, their successors, heirs, assignees and shall continue in effect until such time that the Los Angeles Municipal Code unconditionally permits the use or purpose herein above referred to or unless otherwise released by authority of the Superintendent of Building of the City of Los Angeles."[4]

The bulk of the easement burdens Parcel B.

## 2. The Conflict

Grand View owns Parcel A. The legal description in Grand View's grant deed includes the following description of the driveway easement: "An easement for community driveway purposes over that portion of Parcel B, in the City of Los Angeles, County of Los Angeles, State of California, as shown on Parcel Map L.A. 15, filed in Book 1 page 64 of parcel maps, in the office of the County Recorder of said County, included within the following lines[.]" A metes and bounds description of the driveway easement follows.

---

[4] We refer to the interest created by the covenant as the driveway easement.

The Trust acquired Parcel B in mid-2020. The Trust's grant deed includes the following description of the driveway easement: "An easement for ingress, egress and community driveway purposes in, over, and under that portion of Parcel 'A', in the City of Los Angeles, County of Los Angeles, State of California, as shown on Parcel Map No. 15 [filed] in Book 1, page 64, of parcel maps." A metes and bounds description of the driveway easement follows.

Almost immediately after the Trust acquired Parcel B, Kim began contacting Grand View's managing member and then-resident frequently, asserting Grand View's tenants and guests had no right to park in the driveway easement area, including the area directly in front of Grand View's garage. After Grand View leased its property to a tenant in late 2020, Kim repeatedly called and texted the tenant to insist that he move his car into Grand View's garage or off the property. That tenant subsequently terminated his lease agreement with Grand View six months before the term ended. A second tenant leased Grand View's property in mid-2021. Kim repeatedly called and texted him as well. The Trust also posted no parking signs along the driveway and threatened to have any car parked on the driveway towed.

3.    **The Litigation**

3.1.   **Grand View's Complaint**

In July 2021, Grand View filed a complaint against the Trust. Grand View alleges the Trust interfered with and obstructed its tenant's right to use the driveway easement in

violation of Civil Code section 809.[5] Grand View seeks $72,000 in damages resulting from its tenant's early termination of the lease agreement and requests an injunction barring the Trust from interfering with or obstructing Grand View's use of the driveway easement.

### 3.2. The Trust's Cross-complaint

In September 2021, the Trust filed a verified cross-complaint against Grand View stating claims for private nuisance, quiet title, trespass, negligence, and seeking declaratory relief. The Trust alleges the driveway easement in favor of Grand View is limited to ingress and egress rights, i.e., Grand View may travel over the Trust's property only to access its garage from Grand View Drive and vice versa. According to the Trust, the driveway easement gives Grand View no other rights, such as the right to park within the easement area. The Trust alleges Grand View has consistently misused the driveway easement by parking cars and storing trash cans within the easement area. The Trust seeks damages, declaratory relief, and injunctive relief.

### 3.3. Grand View's Ex Parte Request for a Temporary Restraining Order and Preliminary Injunction

In August 2022, Grand View filed an ex parte application seeking a temporary restraining order and an order to show cause regarding a preliminary injunction. Grand View asked the court to enjoin the Trust from interfering with its use of the

---

[5] "The owner of any estate in a dominant tenement, or the occupant of such tenement, may maintain an action for the enforcement of an easement attached thereto." (Civ. Code, § 809.)

driveway easement for parking that does not impede the Trust's access to its property, posting no-parking and intent-to-tow signs in the shared driveway, threatening to have Grand View's vehicles cited or towed, having Grand View's vehicles cited or towed, and harassing and threatening Grand View's tenants and guests regarding their use of the easement area for parking and other uses that do not interfere with the Trust's access to its property. Grand View urged that the Covenant created an " 'easement for ingress, egress, *and community driveway purpose'* " and, further, that street parking is unavailable in the surrounding area. The application was supported by a declaration from Grand View's new tenant, who detailed Kim's repeated demands that he move any car parked on the driveway—even a car directly in front of Grand View's garage— and the Trust's posting of signs reading, for example, "For Entire Driveway: Parking only for 8416 Grand View Drive. All others will be cited or towed at owner's expense," followed by telephone numbers for the Los Angeles Police Department and a towing company. Grand View also submitted copies of numerous text messages between Kim and its new tenant regarding parking on the driveway as well as copies of parking citations received by the tenant's guests.

The Trust opposed the application, arguing that the driveway easement is limited to roadway use and therefore only gives Grand View the right to pass over the Trust's property to access its garage. The easement does not, according to the Trust, give Grand View any other rights, such as the right to park or store materials on the driveway.

The court issued a temporary restraining order and an order to show cause regarding a preliminary injunction. The

order enjoined the Trust from interfering with Grand View's use of the driveway easement for parking and other uses that did not impede the Trust's access to its property, posting no-parking and intent-to-tow signs on or around the driveway, threatening to have Grand View's vehicles cited or towed, having Grand View's vehicles parked on the shared driveway cited or towed, and harassing and threatening Grand View's tenants and guests regarding their use of the driveway for parking and other uses that do not interfere with the Trust's access to its property. The court also set a briefing schedule and a hearing on the order to show cause on October 4, 2022.

### 3.4. The Trust's Motion for a Preliminary Injunction

Two days after the court issued the temporary restraining order, the Trust filed a motion seeking a preliminary injunction against Grand View. The Trust represented that the driveway easement was a "roadway easement" that did not include any right to park in the easement area. The Trust sought to enjoin Grand View from "obstructing the Kim Trust's free passage and free use of the real property located at 8416 Grand View Drive …" and "causing vehicles, trash cans, gates, and other things and persons to occupy and/or obstruct the shared driveway for storage, long-term parking, and other purposes not consistent with the express terms of the recorded roadway easement." The motion was supported by Kim's declaration, which attached a lengthy text chat history between him and Grand View's tenant in which Kim repeatedly asked the tenant to move his car into his garage and not to park, or have any of his visitors park, anywhere in the easement area.

Grand View opposed the motion on the same grounds stated in its ex parte application for a temporary restraining order.

### 3.5. Preliminary Injunction; Appeal

The court heard both matters in November 2022. No transcript of the hearing or adequate substitute has been provided. (Cal. Rules of Court, rule 8.120.)

The court issued an order regarding both requests for an injunction. The court noted that in deciding whether to issue a preliminary injunction, it was required to consider two interrelated factors: the likelihood of a party's success on the merits of its case at trial and the relative harms suffered by the parties in the presence or absence of an injunction. After reviewing the covenant and considering the parties' arguments, the court found that the Trust had established a likelihood of success on the merits and that both parties were entitled to some form of injunctive relief. The court enjoined Grand View from "obstructing the [Trust's] free passage to and free use of" the Trust's property and from "causing vehicles, trash cans, gates, and other things to occupy and/or obstruct the shared driveway for purposes of storage and long-term parking." Further, and concerning Grand View's request, the court enjoined the Trust from interfering with Grand View's use of the shared driveway for ingress and egress and from harassing and threatening Grand View, its tenants, and other invitees regarding their use of the driveway for ingress and egress purposes.

The court's order and the minute order indicate that the parties raised an issue at the hearing regarding the definition of "long-term parking." The court continued the hearing and requested further briefing on that issue.

9

In its supplemental brief, the Trust proposed that Grand View should be allowed to park vehicles on the shared driveway for a maximum of 30 minutes in the absence of the Trust's permission to park for a longer period. Grand View, by contrast, argued that it should be able to park vehicles on the driveway for up to 72 hours, so long as the vehicles do not interfere with the Trust's ability to access its property.

The court held the continued hearing on November 18, 2022 and issued a revised injunction the same day. No transcript of the hearing or appropriate substitute has been provided. (Cal. Rules of Court, rule 8.120.) The court's revised order imposed the same conditions on the parties with the additional provision that "[l]ong-term parking shall mean parking for 72 or more consecutive hours."

The Trust timely appeals.[6]

## DISCUSSION

The Trust challenges only two aspects of the preliminary injunction: the duration of permissible short-term parking and the prohibition on all (as opposed to unreasonable) future interference with Grand View's use of the driveway easement. We reject both challenges.

### 1. Appellate Review of Preliminary Injunctions

This appeal follows the issuance of a preliminary injunction which is a preliminary adjudication, not a trial on the merits. The purpose of a preliminary injunction is to preserve the status quo

---

[6] Grand View cross-appealed. This Court dismissed the cross-appeal after Grand View failed to file a Case Information Statement. (Cal. Rules of Court, rule 8.100(g).)

pending a decision on the merits. (See, e.g., *Tulare Lake Canal Company v. Stratford Public Utility District* (2023) 92 Cal.App.5th 380, 396 (*Tulare Lake*).)

" '[A]s a general matter, the question whether a preliminary injunction should be granted involves two interrelated factors: (1) the likelihood that the plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief.' (*White v. Davis* (2003) 30 Cal.4th 528, 554 (*White*); see *Butt v. State of California* (1992) 4 Cal.4th 668, 677–678.) Typically, the trial court's evaluation of the relative balance of harms compares the interim harm the plaintiff is likely to sustain if the injunction is denied to the harm the defendant is likely to suffer if the preliminary injunction is issued. (*White, supra*, at p. 554.) The potential merit and interim harm are described as *interrelated* factors because the greater the plaintiff's showing on one, the less must be shown on the other to obtain an injunction. (*Butt v. State of California, supra*, at p. 678.) The goal of this test is to minimize the harm that an erroneous interim decision would cause. (*White, supra*, at p. 554; *People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 284.)" (*Tulare Lake, supra*, 92 Cal.App.5th at pp. 396–397.)

"The trial court's evaluation and weighing of the parties' likelihood of success on the merits and the balance of harm is reviewed for abuse of discretion. (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69–70.) We review de novo the trial court's application of legal principles and we review its findings of fact under the substantial evidence standard. [Citation.]" (*Anderson v. County of Santa Barbara* (2023) 94 Cal.App.5th 554, 568.)

## 2. Construction of Express Easements

" 'Interests in land can take several forms, including "estates" and "easements." ' [Citation.] 'An estate is an ownership interest in land that is, or may become, possessory.' (*Ibid*.) 'An easement,' by contrast, 'gives a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be less than the right of ownership.' [Citation.] [¶] The law recognizes several methods of creating an easement. Among other methods, the parties to a real property transaction may grant or reserve an easement as part of the conveyance of land; an individual may acquire an easement by prescription, through the continuous, hostile, and adverse use of the property; or a court acting in equity may order that an easement be created under specified circumstances. (6 Miller & Starr, Cal. Real Estate [4th ed. 2023] § 15:13.)" (*Romero v. Shih* (2024) 15 Cal.5th 680, 692 (*Romero*).)

"When an easement is granted or reserved as part of a real property transaction, the grant or reservation may appear expressly in the terms of a written instrument. [Citation.]" (*Romero, supra*, 15 Cal.5th at p. 692.) The language of the document creating an easement defines the easement's scope. (Civ. Code, § 806 ["The extent of a servitude is determined by the terms of the grant … ."]; *Romero*, at p. 692.) " 'Deeds are interpreted in the same manner as contracts. [Citation.] … In interpreting a deed, our primary objective is to determine and carry out the intent of the parties by looking at the deed's plain language, "as construed in light of any extrinsic evidence which may prove a meaning [of] which the language of the instrument is reasonably susceptible." ' [Citation.] In determining the uses permitted by an easement, the court must also consider the

12

' "purpose and character" ' of the easement [citation] and its historic use [citation]." (*Visitacion Investment, LLC v. 424 Jessie Historic Properties, LLC* (2023) 92 Cal.App.5th 1081, 1091 (*Visitacion*).)

## 3. Analysis

As noted, the Trust has focused its appeal on two narrow aspects of the court's preliminary injunction. But to address the Trust's concerns, we must place our analysis in context. We begin, therefore, by evaluating the court's finding that the Trust is likely to prevail at trial and address the Trust's arguments in turn.

### 3.1. The Trust's Likelihood of Success on the Merits

"A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim." (*Butt v. State of California* (1992) 4 Cal.4th 668, 678.) Here, the court concluded the Trust was likely to prevail at trial, i.e., that the covenant and Grand View's grant deed only conveyed to Grand View the right to drive over Parcel B to access the garage located on Parcel A. But although the court recited the language of the covenant, it did not undertake a detailed analysis of the language as part of its analysis, as is required to ascertain the scope of the rights conveyed. Had it done so, it might have reached a different conclusion.

As noted, the first full paragraph of the covenant states, "For the purpose of complying with the requirements of Los Angeles City Council Ordinance No. 111,049, effective May 2, 1959, amending Subdivision 4 of Subsection A of Section 12.21 of

13

the Los Angeles Municipal Code, the undersigned hereby covenant and agree with the City of Los Angeles that the above legally described Parcels A and B of real property shall have established on and between them a common or community driveway described as follows[.]" A legal description of the easement follows.

This paragraph of the covenant provides several clues about the grantor's intent. First, the covenant uses "common" and "community" to describe the driveway, suggesting the grantor intended to convey equal and identical privileges to Parcel A and Parcel B. "Common" means, as pertinent here, "belonging to or shared by two or more individuals or things or by all members of a group." (Merriam-Webster.com, <https://www.merriam-webster.com/dictionary/common> [as of July 2, 2024], archived at <https://perma.cc/58J8-YHE2>.) Similarly, "community" as used in the deed means "joint ownership or participation." (Merriam-Webster.com, <https://merriam-webster.com/dictionary/community> [as of July 2, 2024], archived at <https://perma.cc/J6HH-LV66>.) Further, the covenant creates one easement, i.e., it specifies the same easement area for both Parcel A and Parcel B to use as a community driveway. If the grantor had intended to create a limited right of ingress and egress over Parcel B in favor of Parcel A while preserving Parcel B's exclusive use of the easement area for parking and other uses, he could have created two easements with differently defined burdens and privileges.

Second, the court agreed with the Trust's assertion that the covenant created a "roadway easement" over Parcel B, i.e., the easement only allows Grand View to drive to and from the garage on Parcel A. But the area described in the covenant is much

14

larger than necessary to accomplish that purpose. Indeed, the driveway easement includes not only the area leading directly to Grand View's garage but also the entire area in front of the Trust's residence and the adjacent area used by the Trust for parking and trash can storage. Those areas of the driveway easement appear to be unnecessary for Grand View's ingress and egress. In other words, if the grantor had intended to create an easement in favor of Parcel A limited to ingress and egress rights over Parcel B, as the court found, he could have substantially reduced the size of the easement area.

Third, the court agreed with the Trust that the covenant should be construed narrowly, i.e., as providing the minimum rights required under Los Angeles Municipal Code Section 12.21(A)(4)(h).[7] Section 12.21 generally defines the number of parking spaces required for different types of property and the cited subdivision requires that every property have an "access driveway" connecting off-street parking with a street, alley, or other thoroughfare. The Trust contends that the term

---

[7] At the time the grantor executed the covenant, the provision read in pertinent part: "Driveway and Parking Space Dimensions. An access driveway shall be provided and maintained between each automobile parking space or area and a street, alley or private street approved in accordance with the provisions of Article 8 of this Chapter; such access driveway to be located entirely on the lot which it serves. However, such access driveway need not be located entirely on the same lot as the dwelling and parking space it serves if such driveway, lot and dwelling existed on September 6, 1961." (Los Angeles Mun. Code, former § 12.21, subd. (A)(4)(h), at superseded pp. 63–64, Nov. 1, 1962.) The Trust relies on the current version of Section 12.21, as well as materials and forms now available from the City of Los Angeles Department of Building and Safety, to support its construction.

"driveway" should be interpreted consistent with the minimum requirements of Section 12.21(A)(4)(h), i.e., as a means of traveling from Grand View Avenue to Grand View's garage. But the fact that the covenant was required by the Municipal Code does not necessarily establish that the grantor intended to provide Parcel A with the minimum requirements of the Code. In other words, Section 12.21 does not override the explicit language of the covenant that may reasonably be construed to grant more than a limited right of ingress and egress.

The next paragraph of the covenant, following the reference to the legal description of the easement, also suggests the grantor may have intended to grant Parcel A more than a limited right of ingress and egress over Parcel B. It states, "[t]hat in the event the undersigned owner shall sell or convey either Parcel A or Parcel B it is further covenanted and agreed said owners shall also grant to the grantee of the portion conveyed, for so long as this covenant shall remain in effect, the right to the joint use of that portion of the common or community driveway located upon the parcel which is retained in ownership, and said owners shall reserve in said grantors, their successors, heirs, and assigns for so long as this covenant shall remain in effect, the right to the use of that portion of the common or community driveway which is located upon the parcel so conveyed." The terms "community" and "common," modifying "driveway," are repeated in this paragraph and the right to the *joint use* of the portions of the driveway located on each parcel is made explicit. This language is broad, rather than narrowly drawn to create only a right of passage.

As the parties and the court noted, the survey map attached as page three of the covenant is titled "Sketch showing

16

proposed common driveway easement for Parcels A & B." This appears to be a notation by the surveyor. Further, page four, which includes the metes and bounds description, is titled "Legal description of a common driveway easement for ingress and egress purposes." Again, the title appears to be a note by the surveyor. The Trust contends the notation on page four supports its narrow construction of the easement while Grand View contends the notation on page three supports its broader construction. It appears the court agreed with the Trust. While these notations could be indicative of the grantor's intent, the court would need additional evidence to make that assessment. But at this stage, these notations are not illuminating, particularly given that they are somewhat contradictory as to the scope of the easement.

In any event, the language of the grant deeds is consistent with the language of the covenant. As noted, Grand View's grant deed includes the following description of the driveway easement: "An easement for community driveway purposes over that portion of Parcel B, in the City of Los Angeles, County of Los Angeles, State of California, as shown on Parcel Map L.A. 15, filed in Book 1 page 64 of parcel maps, in the office of the County Recorder of said County, included within the following lines[.]" It does not include narrowing language such as "an easement for ingress and egress purposes between Grand View Drive and the Western boundary of Parcel A," which would describe a limited right of access over Parcel B. The Trust's grant deed includes the following description of the driveway easement: "An easement for ingress, egress and community driveway purposes in, over, and under that portion of Parcel 'A', in the City of Los Angeles,

17

County of Los Angeles, State of California, as shown on Parcel Map 15 [filed] in Book 1, page 64, of parcel maps."

It is true, as the court noted, that the covenant does not expressly state that the driveway easement includes parking rights. But for the reasons we have just explained, the covenant may reasonably be construed as granting more than a limited right of ingress and egress.

In sum, the language of the covenant undermines the court's conclusion that the Trust is likely to prevail at trial. In this context, we turn to the issues raised by the Trust.

### 3.2.    Parking Restriction Imposed on Grand View

The Trust contends that the court abused its discretion in allowing Grand View to park vehicles on the shared driveway for up to 72 hours. We disagree.

The parties cited various parking-related rules and regulations in their supplemental briefs on this issue. Relying on its contention that the driveway easement is limited to roadway use, the Trust referenced roadway-related short-term parking limits found in the Los Angeles Municipal Code. Specifically, the Trust noted that roadways with curbs painted white (loading) and green (short-term) allow parking of up to three minutes and up to 15 minutes, respectively. Grand View, by contrast, noted that under the Municipal Code, street parking in the City of Los Angeles is permitted for up to 72 hours.[8] It also asserted that short-term parking at local airports allows parking up to 30 days.

---

[8] Several pages of the Trust's opening brief discuss what it claims occurred at the November 18, 2022 hearing. Because no reporter was present at the hearing and the Trust has not provided this Court with

18

We cannot conclude the court abused its discretion in allowing Grand View to park vehicles on the driveway for up to 72 hours at a time. As we have said, the covenant may entitle Grand View to joint use of the entire easement area rather than a limited right of ingress and egress. At this preliminary stage of the litigation, a 72-hour parking limit addresses some of the Trust's concerns without depriving Grand View of all use of the driveway area.

In support of its argument that the court abused its discretion, the Trust invents a five-factor analysis regarding easement-related injunctions that it contends the court failed to apply. It is, however, made of whole cloth as the Trust cites no case that requires such an analysis. Nevertheless, we address the Trust's points briefly.

First, citing *Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, the Trust contends the court was required to decide whether the driveway easement is a roadway easement or a parking easement. But the Trust poses a false dichotomy by suggesting that the driveway easement must be one or the other and could not include both privileges. In any event, *Scruby* is of no assistance here because the easement conveyed in that case was " '[a] nonexclusive easement, 52 feet in width, for road and utility purposes.' " (*Id.* at pp. 700–701.) The court's conclusion that the easement did not give the grantee any right to park on the easement rested on its interpretation of the language of the grant (which is not similar to the language at issue in the present case) as well as a significant amount of extrinsic evidence and a

---

a suitable substitute for a reporter's transcript, we disregard the Trust's discussion of the hearing and its related arguments.

19

visit to the premises (none of which is relevant here.) (*Id*. at pp. 703–706.)

As to the Trust's remaining "factors," the Trust recites blackletter law regarding easements and then opines on how those legal principles should have been applied by the court. For example, the Trust notes that " '[w]hen an easement is based on a grant, as it is here, the grant gives the easement holder both those interests expressed in the grant and those necessarily incident thereto.' " We agree, as a general matter. (See, e.g., *Visitacion, supra,* 92 Cal.App.5th at p. 1091 [grant of easement gives the easement holder those interests expressed in the grant and those necessarily incident thereto].) The Trust then insists that parking in the driveway easement is not "necessarily incident" to an easement for ingress and egress. The Trust's other "factors" take a similar approach.

We reiterate that this appeal comes to us after the issuance of a preliminary injunction and that the purpose of a preliminary injunction is to preserve the status quo, not to resolve all issues on the merits. We leave the consideration of the additional issues raised by the Trust to the sound discretion of the trial court as it is informed by the interpretation of the covenant and other relevant evidence presented in further proceedings regarding a permanent injunction.

### 3.3.   Prohibition of All Interference with Grand View's Use of the Easement

Finally, the Trust claims the court abused its discretion in prohibiting it from interfering with Grand View's use of the driveway easement. In the Trust's view, it should only be prohibited from *unreasonable* interference.

As the Trust notes, "[t]he general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement." (*City of Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 579; see *Pappas v. State Coastal Conservancy* (2021) 73 Cal.App.5th 310, 313–314, fn. 2.)[9] We agree that, in the long term, Grand View's use of the driveway easement should not unduly burden Parcel B.

The question before us, however, is whether the court abused its discretion in imposing the "no interference" condition as part of a *preliminary injunction*. On these facts, we see no error. From the time it acquired Parcel B, the Trust (and specifically Kim) badgered Grand View and its tenants to prevent Grand View's use of the driveway for any use other than ingress and egress from Grand View's garage. The Trust went so far as to post signs prohibiting parking and to have any vehicle parked in the driveway towed. The Trust summoned the Los Angeles Police Department and persuaded an inexperienced officer to issue citations to four cars belonging to guests of Grand View's tenant. In other words, the Trust behaved as if it had already succeeded in this litigation.

Given the Trust's aggressive posturing in advance of this litigation, the court did not err in restraining the Trust from all interference with Grand View's use of the driveway easement. A more subjective standard of "reasonableness" would leave room for manipulation and harassment as well as further litigation.

---

[9] The Trust also cites *Dolnikov v. Ekizian* (2013) 222 Cal.App.4th 419, 429, for a similar proposition as to secondary easement rights, i.e., those rights necessary for the use of the easement.

21

## DISPOSITION

The order is affirmed. Respondent Grand View Real Property, LLC shall recover its costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.